The State of Ohio, Appellee, *v.* Albini, Appellant.

[Cite as State v. Albini (1971), 29 Ohio App. 2d 227.]

(No. 71-158—Decided October 5, 1971.)

*Mr. John C. Young,* city attorney, *Mr. Thomas S. Erlenbach,* city prosecutor, and *Mr. William R. Cromley,* for appellee.

*Mr. James R. Willis,* for appellant.

Whiteside, J. This is an appeal from a judgment of the Franklin County Municipal Court finding defendant, appellant herein, guilty of exhibiting obscene films.

Defendant has raised no issue with regard to the determination of the trial court that the films in question

were obscene, and has not included the films with the bill of exceptions. However, defendant's testimony in the bill of exceptions, and the finding of the trial court regarding the nature of the films in question, indicate that the films in question would fall into the category of what has been termed "hard core pornography." Defendant has assigned four assignments of error, as follows:

"(1) The court erred in denying the appellant's motion to suppress, and to exclude, as evidence the films in this case.

"(2) The court erred in admitting, over defense objections, the films in this case.

"(3) The court erred in ruling that an adversary hearing and determination of obscenity is not a constitutional prerequisite to the arrest of a motion picture exhibitor and the seizure of the film being shown.

"(4) Where the evidence shows that the exhibitor of a particular film is protected by the First Amendment, a conviction of the exhibitor of such film on the basis of a determination that such film is obscene violates due process and is contrary to law."

The first three assignments of error raise, essentially, the same issue, and we shall discuss them together, as defendant did in his brief.

Defendant cites, in support of his position, several lower federal court decisions, typical of which is *Goodwin* v. *Morris* (1970), 23 Ohio Misc. 331, wherein the syllabus states:

"Any allegedly obscene materials seized in connection with state arrests and prosecutions which did not involve a preliminary adversary determination of their obscenity will be suppressed as evidence in such pending prosecutions, in an action for declaratory judgment in a federal district court."

These lower federal court decisions are largely an unjustified extension of the United States Supreme Court decision in *A Quantity of Copies of Books* v. *Kansas* (1964), 378 U. S. 205. We decline to follow these lower court de-

cisions for the simple reason that we find them to be in conflict with the pronouncements of the United States Supreme Court.

First, *A Quantity of Books, supra*, did not involve criminal prosecution but, rather, a noncriminal proceeding whereby obscene material could be seized as contraband and destroyed. Secondly, contrary to a popular misconception, the United States Supreme Court has not held that all prior restraint or censorship of motion pictures is unconstitutional. On the contrary, the United States Supreme Court has expressly held that a state may require submission of motion pictures for a determination of obscenity, in advance of exhibition. *Times Film Corp.* v. *City of Chicago* (1961), 365 U. S. 43. This holding was clarified in *Freedman* v. *Maryland* (1965), 380 U. S. 51, wherein it is stated, at pages 57-59:

"* * * The administration of a censorship system for motion pictures presents peculiar dangers to constitutionally protected speech. Unlike a prosecution for obscenity, a censorship proceeding puts the initial burden on the exhibitor or distributor. Because the censor's business is to censor, there inheres the danger that he may well be less responsive than a court—part of an independent branch of government—to the constitutionally protected interests in free expression. And if it is made unduly onerous, by reason of delay or otherwise, to seek judicial review, the censor's determination may in practice be final.

"Applying the settled rule of our cases, we hold that a noncriminal process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. First, the burden of proving that the film is unprotected expression must rest on the censor. * * * Second, while the State may require advance submission of all films, in order to proceed effectively to bar all showings of unprotected films, the requirement cannot be administered in a manner which would lend an effect of finality to the censor's determina-

tion whether a film constitutes protected expression. * * * To this end, the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. * * * Therefore, the procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license."

To the same effect is *Teitel Film Corporation* v. *Cusack* (1968), 390 U. S. 139. In *United States* v. *Thirty-Seven (37) Photographs* (1971), 91 S. Ct. 1400, the United States Supreme Court held that customs agents could lawfully seize obscene photographs possessed by a person returning to this country from Europe, provided the seizure was followed by a prompt institution and resolution of judicial proceedings to determine the obscenity of the photographs. The Supreme Court stated, at page 1407:

"* * * Seizure in the present case took place on October 24 and forfeiture proceedings were instituted on November 6— a mere 13 days after seizure. Moreover, decision on the obscenity of Luros' materials might well have been forthcoming within 60 days had petitioner not challenged the validity of the statute and caused a three-judge court to be convened. We hold that proceedings of such brevity fully meet the constitutional standards set out in *Freedman, Teitel,* and *Blount.* * * *"

The foregoing cases dealt with seizures or prior restraint in noncriminal proceedings. Here, we are concerned with a criminal proceeding.

In a criminal proceeding, the seizure of evidence of crime, including crimes involving obscenity, presents primarily a Fourth Amendment problem, rather than a First Amendment problem. The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *.''

This right has been held to be one of the liberties protected by the due process clause of the Fourteenth Amendment to the United States Constitution against state intrusion. Even if this were not the situation, Article I, Section 14, Ohio Constitution, provides in practically identical language:

''The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures, shall not be violated * * *.''

Here, the seizure was pursuant to an arrest without a warrant. There is no contention by defendant that the arrest was invalid, or that any unlawful search was made except for the reason that obscenity was involved. The offense was committed in the presence of the police officers, and the evidence seized was obviously within their view.

There is no constitutional requirement that an arrest for a violation of obscenity laws be made in any different manner from an arrest for the violation of any other law. The ''due process'' requirements are the same in each instance. ''Probable cause'' is the test. There was ''probable cause'' in this case.

We take it to be axiomatic that evidence which may be lawfully seized pursuant to a lawful search, upon a lawful arrest without a warrant, is limited to evidence which lawfully could be seized under a search warrant. In this regard, R. C. 2933.21 provides as follows:

''A judge of a court of record may, within his jurisdiction, issue warrants to search a house or place:

''(A) For property stolen, taken by robbers, embezzled, or obtained under false pretense;

''(B) For weapons, implements, tools, instruments, articles or property used as a means of the commission of a crime, or when any of such objects or articles are in the possession of another person with the intent to use them as a means of committing crime;

''(C) For forged or counterfeit coins, stamps, imprints, labels, trade-marks, bank bills, or other instruments

of writing, and dies, plates, stamps, or brands for making them;

"(D) For instruments, articles, or medicines for procuring abortions, or self-pollution; for obscene materials and materials harmful to minors involved in a violation of section 2903.14 or 2905.35 of the Revised Code, but only so much of such materials shall be seized as are necessary for evidence in a prosecution of any such violation;

"(E) For gaming table, establishment, device, or apparatus kept or exhibited for unlawful gaming, or to win or gain money or other property, and for money or property won by unlawful gaming.

"The enumeration of certain property and materials in this section shall not affect or modify other laws for search and seizure."

Seizure of the evidence herein involved was justified, both by divisions (B) and (D) of R. C. 2933.21, as property used as a means for the commission of a crime, and as obscene materials involved in a violation of R. C. 2905.35. Only so much of such obscene material as was necessary for evidence in a prosecution was seized. The fact that it may have been the only copy of the obscene material in the possession of defendant is immaterial. Unless R. C. 2933.21 is unconstitutional, the seizure herein involved was both reasonable and justified.

The seizure of evidence without a warrant, following a lawful search, as an incident to a lawful arrest, is a strictly limited right. It arises from the inherent necessities of the situation at the time of the arrest. Its primary purpose must be to prevent the concealment or destruction of evidence of the crime for which the arrest was made. See *Chimel* v. *California* (1969), 395 U. S. 752. The seizure here involved was reasonably designed to effect that purpose. The evidence (films) seized was used as a means for the commission of the crime for which the arrest was made. Were the evidence anything other than motion picture films or some other means of expression, there could be no doubt but that the seizure did not violate any constitutional right of the defendant.

Defendant, however, contends that the First Amendment prohibits the seizure of motion picture films, even when seized as evidence of the commission of a crime incident to an otherwise lawful arrest, unless there is a prior judicial determination of obscenity. As pointed out above, this is not the effect of the First Amendment, so long as the seizure is followed by a prompt institution of judicial proceedings to determine the issue of obscenity.

As stated in *Terry* v. *Ohio* (1968), 392 U. S. 1, at page 26:

"* * * An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows. * * *"

The affidavit in the instant case was filed on the same day as the arrest. As we recently held in *State, ex rel. Sensenbrenner,* v. *Adult Book Store* (1971), 26 Ohio App. 2d 183, obscenity is not within the area of constitutionally protected speech and press under either the First or Fourteenth Amendments to the United States Constitution.

In *Lee Art Theatre, Inc.,* v. *Virginia* (1968), 392 U. S. 636, the Supreme Court ordered evidence suppressed not because it was seized incident to a lawful arrest but, rather, because the search warrant was issued without probable cause. A mere statement, the court held, that material is believed to be obscene is insufficient for that purpose. In that case, the seizure was made following an unlawful search and was not incident to a lawful arrest.

We, accordingly, conclude that the arrest of defendant and the seizure of the motion picture films as evidence did not violate any constitutional right of defendant under either the First, Fourth or Fourteenth Amendments to the United States Constitution, or under the Ohio Constitution. Likewise, R. C. 2933.21 violates no constitutional provisions. The first three assignments of error are overruled.

Defendant's remaining contention is that even though

a motion picture film may be obsessed with sex, where the viewing public has been sufficiently advised as to the possible offensiveness thereof, and the film is not advertised in a pandering way, the exhibition of such film to adults is protected by the First Amendment. Defendant's contention is predicated upon *Stanley* v. *Georgia* (1969), 394 U. S. 557, wherein the United States Supreme Court held that a person could not be prosecuted for the possession of pornography within his own home. Defendant contends "that if a rich Stanley could view an obscene film in the privacy of his home, a poor Stanley should be free to visit a protected theater or library."

We rejected a similar argument in *Adult Book Store, supra*. First, contrary to defendant's contention, pandering is involved in this case.

As we held in *Adult Book Store, supra*, pandering of obscenity is the business of purveying pictorial or graphic matter openly advertised to appeal to the erotic interest of customers, or potential customers, by either blatant and explicit advertising or subtle and sophisticated advertising.

Defendant's testimony indicated that the advertising indicated the films were for "consenting adults," were "triple X rating," were "San Francisco hard core," and were "sex fare." Such evidence does not indicate that pandering was not involved.

In *Adult Book Store, supra*, we rejected the basic contention of defendant, stating the following at page 212:

"If this reasoning were adopted, there would be no material, including the worst of the hard core pornography, the sale of which could constitutionally be prohibited so long as the material was sold only to those who wished to purchase it because it was obscene."

Subsequent to our decision therein, the United States Supreme Court restated a similar conclusion in *United States* v. *Thirty-Seven (37) Photographs, supra*, and *United States* v. *Reidel* (1971), 91 S. Ct. 1410. In *Reidel* it was stated at page 1413:

"* * * The personal constitutional rights of those like Stanley to possess and read obscenity in their homes and their freedom of mind and thought do not depend on

whether the materials are obscene or whether obscenity is constitutionally protected. Their rights to have and view that material in private are independently saved by the Constitution.

"*Reidel* is in a wholly different position. He has no complaints about governmental violations of his private thoughts or fantasies, but stands squarely on a claimed First Amendment right to do business in obscenity and use the mails in the process. But *Roth* has squarely placed obscenity and its distribution outside the reach of the First Amendment and they remain there today. *Stanley* did not overrule *Roth* and we decline to do so now."

It was stated in *Thirty-Seven (37) Photographs, supra,* at page 1408:

"* * * Whatever the scope of the right to receive obscenity adumbrated in *Stanley*, that right, as we said in Reidel, does not extend to one who is seeking, as was Luros here to distribute obscene materials to the public, nor does it extend to one seeking to import obscene materials from abroad, whether for private use or public distribution. As we held in *Roth* v. *United States*, 354 U. S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957), and reiterated today in *Reidel, ante,* obscenity is not within the scope of first amendment protection. * * *"

Defendant has cited several lower federal court decisions in support of his contention. Those decisions have no persuasive value inasmuch as they are inconsistent with the pronouncements of the United States Supreme Court that obscenity is not expression protected by the First and Fourteenth Amendments as reiterated in *Thirty-Seven (37) Photographs* and *Reidel, supra.*

The validity of the statutes under which defendant was prosecuted cannot be questioned, in view of the recent judgment of the Ohio Supreme Court in *State, ex rel. Keating,* v. *Vixen* (1971), 27 Ohio St. 2d 278, wherein that court set forth a workable method for dealing with motion picture films which include both obscene and nonobscene scenes. Regarding the issue before us, the Ohio Supreme Court stated, at page 283:

"Neither the First Amendment of the United States

236

Constitution nor the Ohio Constitution will be construed as inhibiting the General Assembly from proscribing the commercial exploitation of a purported act of sexual intercourse.''

Defendant was engaged in the commercial exploitation of obscenity.

There is no constitutional right to engage in the business of commercial exploitation of obscenity. Defendant's fourth assignment of error is overruled.

For the foregoing reasons, the judgment of the Franklin County Municipal Court is affirmed, and this cause is remanded to that court for the execution of sentence.

*Judgment affirmed.*

STRAUSBAUGH and HOLMES, JJ., concur.