It is further ordered that the defendant, city of Toledo, pay the cost of these proceedings.

MOODY, MAYOR, *v.* THRUSH CORPORATION ET AL.*

*Affirmed by the Court of Appeals for Franklin County, Ohio, by decision rendered October 24, 1972, in cases No. 72 AP-140 and 72 AP-182 in that court.

(No. 72CV-03-845—Decided April 18, 1972.)

Common Pleas Court of Franklin County.

*Mr. James J. Hughes, Jr.*, city attorney, for plaintiff.
*Mr. Laurence E. Sturtz*, for defendants.

FLOWERS, J.   Pursuant to request by certain of the defendants, the within case came on for further hearing (April 13, 1972) on the preliminary injunction previously issued by this court.   Upon application of plaintiff, one of the defendants, Cosby Corporation, was dismissed.   The case being at issue, pursuant to R. C. 2903.37, and Rule 65, Ohio Rules of Civil Procedure, the court proceeded to immediate trial of the action on the merits.   The evidence received at the trial on the preliminary injunction was admitted as a part of the record of the trial on the merits; further evidence was adduced by plaintiff; the remaining defendants not desiring to submit further evidence, the matter was submitted for decision by this court following the overruling of a motion to dismiss as made by defendants.

The present complaint, brought pursuant to R. C. 2905.35 and 2905.37, seeks to enjoin the defendants from the display and advertising of certain movies alleged to be obscene.   Those sections provide, in part, as follows:

R. C. 2905.35: "No person with knowledge of the content and character of the obscene material or performance involved, shall make, manufacture, write, draw, print, reproduce, or publish any obscene material, knowing or having reasonable cause to know that such material will be sold, distributed, circulated, or disseminated; or sell, lend, give

away, distribute, circulate, disseminate, exhibit, or advertise any obscene material; or write, direct, produce, present, advertise, or participate in an obscene performance; or possess or have in his control any obscene material with intent to violate this section; or offer or agree to do any act in violation of this section, or cause any such act to be done by another * * *''

R. C. 2905.37: ''(A) Where it appears that R. C. 2903.-14 or 2905.35 is being or is about to be violated, the county prosecutor or chief executive or legal officer of a municipal corporation in the jurisdiction where such violation is taking place or is about to take place, may maintain an action in the common pleas court to enjoin the sale, distribution, or presentation of the obsence material or performance, or enjoin the sale, distribution, or presentation to minors under eighteen of the material or performance harmful to minors.

''(B) The defendant is entitled to trial on the merits within five days after joinder of the issues, and the court shall render its decision within not more than five days after conclusion of the trial. If the court finds that such material or performance is obscene, it shall enjoin the sale, distribution, or presentation of such material or performance, if the court finds that such material or performance is harmful to minors, it shall enjoin the sale, distribution, or presentation of such material or performance to minors under eighteen.''

R. C. 2905.34 provides as follows:

''DEFINITIONS. As used in R. C. 2903.13 to 2903.16, inclusive, and R. C. 2905.34 to 2905.39, inclusive:

''(A) Any material or performance is 'obscene' if, when considered as a whole and judged with reference to ordinary adults, any of the following apply:

''(1) Its dominant appeal is to prurient interest;

''(2) Its dominant tendency is to arouse lust by displaying or depicting nudity, sexual excitement, or sexual conduct in a way which tends to represent human beings as mere objects of sexual appetite;

''(3) Its dominant tendency is to arouse lust by dis-

playing or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;

"(4) It contains a series of displays or descriptions of nudity, sexual excitement, sexual conduct, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient interest, when the appeal to such interest is primarily for its own sake or for commercial exploitation, rather than for a genuine scientific, educational, sociological, moral, or artistic purpose.

"(B) 'Nudity' means the showing, representation, or depiction of human male or female genitals, pubic area, or buttocks with less than a full, opaque covering, or of a female breast with less than a full, opaque covering or any portion thereof below the top of the nipple, or of covered male genitals in a discernibly turgid state.

"(C) 'Sexual excitement' means the condition of human male or female genitals when in a state of sexual stimulation or arousal.

"(D) 'Sexual conduct' means masturbation, homosexuality, lesbianism, sadism, masochism, natural or unnatural sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or, if such person is a female, a breast.

"(E) 'Material' means any book, pamphlet, ballad, printed paper, phonographic record or tape, motion picture film, print, picture, figure, image, description, or other tangible thing capable of being used to arouse interest through sight, sound, or in any other manner.

"(F) 'Performance' means any motion picture, preview, play, show, skit, dance, or other exhibition performed before an audience."

Defendants, Thrush Corporation, David Eugene Hanson and Grover Wayne Sharp, contend in substance as follows in their joint answer and subsequent motion to dismiss:

(1) That the above cited statutes, including R. C. 2905.38 are unconstitutional and contrary to the First,

Fourth and Fourteenth Amendments to the Constitution of the United States of America;

(2) That the films in question were the subject of an unreasonable search and seizure under the foregoing Amendment;

(3) That a prior adversary judicial determination of the fact of obscenity is required under the foregoing Amendments;

(4) That trial on the merits was not held within 5 days after joinder of the issues as required by R. C. 2905.37.

Specifically involved in this proceeding are eight films (hereafter named and some unnamed), four of which were personally viewed in their entirety by the court and testimony was presented that the remaining film exhibits were of like and similar nature and quality. The evidence indicated that the subject films were taken by police officers upon three separate occasions at a commercial, public showing of same at which an admission charge of five dollars per person was required. In each instance, the films were viewed from the screen by the officers and seized incident to an arrest or in conjunction with a warrant for arrest.

The question of obscenity has been the recent subject of numerous and detailed decisions by Ohio courts. In each instance, the decision upheld the same or comparable Ohio statutes and were based upon the developed case law of the United States Supreme Court. It is interesting to note that these defendants cite many of the same federal cases in support of their contentions. Detailed quotation from these Ohio decisions is not deemed necessary. However, citation thereof and partial quotation therefrom is desirable.

Suffice it to say that the statutes involved contemplate both a criminal proceeding or an alternate proceeding by way of injunction. The cases noted hereinafter involve both proceedings and some involve injunctive proceedings under comparable "nuisance" statutes. The recent case of *State, ex rel. Keating, v. The Film "Vixen,"* 27 Ohio St. 2d 278, decided July 21, 1971, considered certain of the statutes here involved and observed at page 283 of the opinion:

"Neither the First Amendment of the United States Constitution nor the Ohio Constitution will be construed as inhibiting the General Assembly from proscribing the commercial exploitation of a purported act of sexual intercourse."

The Court of Appeals of Franklin County has considered a number of cases involving the question of obscenity. An exhaustive review of both federal and state decisions appears in *State, ex rel. Sensenbrenner,* v. *Adult Book Store* (1971), 26 Ohio App. 2d 183. Paragraphs 1, 2, 3 and 9 of the syllabus read as follows:

"1. While the states, pursuant to the Fourteenth Amendment to the United States Constitution, have a broader power to restrict the freedom, or liberty, of speech and the press than the federal government has under the First Amendment, obscenity is not within the area of constitutionally protected freedom or liberty of speech and the press under either the First or Fourteenth Amendments.

"2. No standard for testing what constitutes obscenity has been established by a majority of the United States Supreme Court, but there are several varying and conflicting standards applied to render judgments with one predominant minority view constituting the 'balance' by which the outcome of cases is determined.

"3. The 'deciding-minority view' of the United States Supreme Court is that obscenity constitutes material as to which the following three elements exist and coalesce: (1) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (2) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (3) the material is utterly without redeeming social value.

"9. 'Medium core pornography' as well as 'hard core pornography' constitutes obscenity that is not within the area of constitutionally protected speech or press."

A more recent decision by that court is the case of *State* v. *Albini*, 29 Ohio App. 2d 227, decided October 5, 1971. The syllabus thereof reads as follows:

"1. Under the same circumstances, and subject to the same limitations as are generally imposed with regard to arrests without a warrant for a violation of other criminal laws, a police officer may make an arrest without a warrant for a violation of criminal obscenity laws.

"2. Incident to a lawful arrest without a warrant for a violation of criminal obscenity laws, a police officer may seize so much of the obscene material as is necessary for evidence in a prosecution of such violation so long as such seizure is for the purpose of preserving such evidence and preventing its concealment or destruction and no unlawful search is involved.

"3. There is no constitutional right to engage in the business of commercial exploitation of obscenity."

At pages 230-31 of the decision, the following appears in part:

"Here, the seizure was pursuant to an arrest without a warrant. There is no contention by defendant that the arrest was invalid, or that any unlawful search was made except for the reason that obscenity was involved. *The offense was committed in the presence of the police officers, and the evidence seized was obviously within their view.*

"There is no constitutional requirement that an arrest for a violation of obscenity laws be made in any different manner from an arrest for the violation of any other law. The 'due process' requirements are the same in each instance. 'Probable cause' is the test. There was 'probable cause' in this case." (Emphasis supplied.)

Again, at page 233, appears the following:

"Defendant, however, contends that the First Amendment prohibits the seizure of motion picture films, even when seized as evidence of the commission of a crime incident to an otherwise lawful arrest, unless there is a prior judicial determination of obscenity. As pointed out above, this is not the effect of the First Amendment, so long as the seizure is followed by a prompt institution of judicial proceedings to determine the issue of obscenity."

\*        \*        \*

"We, accordingly, conclude that the arrest of defendant and the seizure of the motion picture films as evidence did not violate any constitutional right of defendant under either the First, Fourth or Fourteenth Amendments to the United States Constitution, or under the Ohio Constitution. Likewise, R. C. 2933.21 violates no constitutional provisions. The first three assignments of error are overruled."

Finally, at pages 235-36, the decision reads as follows:

"The validity of the statutes under which defendant was prosecuted cannot be questioned, in view of the recent judgment of the Ohio Supreme Court in *State, ex rel. Keating,* v. *Vixen* (1971), 27 Ohio St. 2d 278, wherein that court set forth a workable method for dealing with motion picture films which include both obscene and nonobscene scenes. Regarding the issue before us, the Ohio Supreme Court stated, at page 283:

" 'Neither the First Amendment of the United States Constitution nor the Ohio Constitution will be construed as inhibiting the General Assembly from proscribing the commercial exploitation of a purported act of sexual intercourse.'

"Defendant was engaged in the commercial exploitation of obscenity.

"There is no constitutional right to engage in the business of commercial exploitation of obscenity."

Later decisions of the Court of Appeals of Franklin County on November 30, 1971, *State* v. *Blair,* No. 71-237 and *State* v. *Williams,* Nos. 71-240 and 71-241, enunciate the same principles after considering numerous federal decisions. To the same effect is a recent decision of the Court of Appeals of Lucas County, July 9, 1971, *State, ex rel. Ewing,* v. *Film, "Without a Stitch,"* 28 Ohio App. 2d 184.

The court further notes that in the present case no search was necessary. The evidence filled the theatre as the films were projected upon the screen. The location of the films was open and apparent. The films, in the presence of certain of the defendants and following their arrest, were

voluntarily turned over to the arresting officer. The Fourth Amendment prohibits only *unreasonable* searches and seizures. Under the facts of this case and the foregoing case law, a search warrant is both unnecessary and ridiculous.

With reference to the remaining contention of defendants, the case was not at issue until date of further hearing on April 13, 1972, at which time the court proceeded to immediate trial of the action on the merits.

The statutes involved and the cases aforesaid provide the standards for this case. As Justice Potter Stewart of the United States Supreme Court once observed, "but I know it when I see it." As further paraphrased by this court in its previous decision, "the proof is in the eyes of the beholder."

A personal viewing and hearing of these films revealed each to be devoid of plot, except for a series of sexual acts of all kinds and varieties; lacking of cast, except for a man and woman in each case; lacking of dialogue, except isolated bits of suggestive conversation or statements of enjoyment (primarily "ohs" and "ahs").

Each film depicted live persons performing direct (as opposed to simulated) acts of sexual intercourse; genital contact; physical contact between made and female of genitals, pubic area, buttocks and female breasts; sexual activities of all kinds and varieties, including masturbation, fellatio, cunnilingus and ejaculation. Admittedly, the showing of the films in court was not ideal or under ideal circumstances, because of acoustics, mechanical breakdown and some technical difficulties. However, the position of the court was such as to obtain an uninterrupted view of the particular film in each instance. The sound was not ideal but clear enough to isolate periods of conversation, which were rather infrequent and of the quality previously noted.

Based upon the pleadings and the evidence, including testimony and exhibits, the personal viewing by the court, the statutes and foregoing case law, the court finds that the defendants, Thrush Corporation, David Eugene Hanson and Grover Wayne Sharp, aka Walter Frazier, have been engaged in a commercial course of publicly displaying ob-

scene films, to-wit: Little Red, Pickup, Rainy Day, Brick House, and other unnamed films, in which pictures of direct (as opposed to simulated) acts of sexual intercourse; genital contact; physical contact between male and female of genitals, pubic area, buttocks and female breasts; sexual activities of all kinds and varieties, including maturbation, fellatio, cunnilingus and ejaculation are shown, contrary to R. C. 2905.34; 2905.35 and 2905.37.

The court further finds that said films are obscene in that the following elements exist and coalesce:

1. That the dominant theme of these films appeals to the prurient interest in sex;

2. The material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters;

3. The material is utterly without redeeming social value and contrary to the standards imposed by R. C. 2905.35.

The court further finds that the preliminary injunction should be made permanent as to the foregoing named defendants, three in number, and said films should be confiscated and destroyed.

The court further finds that defendant Livingston Enterprises, Inc., is only involved in the present proceeding as owner of the building involved and the complaint is dismissed as to that defendant only.

The court further finds that the prayer of the complaint as to confiscation of all proceeds from the films is not well made and is denied, as the same are not contraband. *State, ex rel. Ewing,* v. *Film, "Without a Stitch," supra.*

An order and decree in accordance with the foregoing decision, costs to plaintiff, and against defendants, Thrush Corporation, David Eugene Hanson and Grover Wayne Sharp, aka Walter Frazier, together with permanent injunction against said defendants, their transferees or assigns, is being prepared by the court and filed simultaneous hereto.

*Permanent injunction granted.*