# UNITED STATES *v.* REIDEL

No. 534. Argued January 20, 1971—
Decided May 3, 1971

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and HARLAN, BRENNAN, STEWART, and BLACKMUN, JJ., joined. HARLAN, J., filed a concurring opinion, *post,* p. 357. MARSHALL, J., filed an opinion concurring in the judgment, *post,* p. 360. BLACK, J., filed a dissenting opinion, in which DOUGLAS, J., joined, *post,* p. 379.

*Solicitor General Griswold* argued the cause for the United States. With him on the brief were *Assistant Attorney General Wilson* and *Roger A. Pauley.*

*Sam Rosenwein* argued the cause for appellee. With him on the brief was *Stanley Fleishman.*

━━━━━━━━━━━━━━━━

━━━━━━━━━━━━━━━━━

Mr. Justice White delivered the opinion of the Court.

Section 1461 of Title 18, U. S. C., prohibits the knowing use of the mails for the delivery of obscene matter.[1]  The issue presented by the jurisdictional statement in this case is whether § 1461 is constitutional as applied to the distribution of obscene materials to willing recipients who state that they are adults.  The District Court held that it was not.[2]  We disagree and reverse the judgment.

---

[1] The statute in pertinent part provides:

"Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance; and—

   .      .      .      .      .

"Every written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, or how, or from whom, or by what means any of such mentioned matters, articles, or things may be obtained or made, or where or by whom any act or operation of any kind for the procuring or producing of abortion will be done or performed, or how or by what means conception may be prevented or abortion produced, whether sealed or unsealed . . . .

   .      .      .      .      .

"Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.

"Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section to be nonmailable, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, or knowingly takes any such thing from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter."

[2] The trial judge did not issue a written opinion but ruled orally from the bench.

## I

On April 15, 1970, the appellee, Norman Reidel, was indicted on three counts, each count charging him with having mailed a single copy of an illustrated booklet entitled The True Facts About Imported Pornography. One of the copies had been mailed to a postal inspector stipulated to be over the age of 21, who had responded to a newspaper advertisement.[3]  The other two copies had been seized during a search of appellee's business premises; both of them had been deposited in the mail by Reidel but had been returned to him in their original mailing envelopes bearing the mark "undelivered."  As to these two booklets, the Government conceded that it had no evidence as to the identity or age of the addressees or as to their willingness to receive the booklets.  Nor does the record indicate why the booklets were returned undelivered.

Reidel moved in the District Court before trial to dismiss the indictment, contending, among other things, that § 1461 was unconstitutional.  Assuming for the purpose of the motion that the booklets were obscene, the trial judge granted the motion to dismiss on the ground that Reidel had made a constitutionally protected delivery and hence that § 1461 was unconstitutional as applied to him.  The Government's direct appeal is here under 18 U. S. C. § 3731.

## II

In *Roth* v. *United States,* 354 U. S. 476 (1957), Roth was convicted under § 1461 for mailing obscene circulars

---

[3] The advertisement was as follows:

"IMPORTED PORNOGRAPHY—learn the true facts before sending money abroad.  Send $1.00 for our fully illustrated booklet. You must be 21 years of age and so state.  Normax Press, P. O. Box 989, Fontana, California, 92335."

and advertising.[4]  The Court affirmed the conviction, holding that "obscenity is not within the area of constitutionally protected speech or press," *id.,* at 485, and that § 1461, "applied according to the proper standard for judging obscenity, do[es] not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited." *Id.,* at 492.  *Roth* has not been overruled.  It remains the law in this Court and governs this case.  Reidel, like Roth, was charged with using the mails for the distribution of obscene material.  His conviction, if it occurs and the materials are found in fact to be obscene, would be no more vulnerable than was Roth's.

*Stanley* v. *Georgia,* 394 U. S. 557 (1969), compels no different result.  There, pornographic films were found in Stanley's home and he was convicted under Georgia statutes for possessing obscene material.  This Court reversed the conviction, holding that the mere private possession of obscene matter cannot constitutionally be made a crime.  But it neither overruled nor disturbed the holding in *Roth.*  Indeed, in the Court's view, the constitutionality of proscribing private possession of obscenity was a matter of first impression in this Court, a question neither involved nor decided in *Roth.*  The Court made its point expressly: "*Roth* and the cases following that decision are not impaired by today's holding.  As we have said, the States retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home." *Id.,* at 568.  Nothing in *Stanley* questioned the validity of *Roth* insofar as the distribution of obscene material was concerned.  Clearly the Court had

---

[4] *Roth* v. *United States* was heard and decided with *Alberts* v. *California,* in which the Court upheld the obscenity provisions of the California Penal Code.

no thought of questioning the validity of § 1461 as applied to those who, like Reidel, are routinely disseminating obscenity through the mails and who have no claim, and could make none, about unwanted governmental intrusions into the privacy of their home. The Court considered this sufficiently clear to warrant summary affirmance of the judgment of the United States District Court for the Northern District of Georgia rejecting claims that under *Stanley* v. *Georgia*, Georgia's obscenity statute could not be applied to book sellers. *Gable* v. *Jenkins*, 397 U. S. 592 (1970).

The District Court ignored both *Roth* and the express limitations on the reach of the *Stanley* decision. Relying on the statement in *Stanley* that "the Constitution protects the right to receive information and ideas . . . regardless of their social worth," 394 U. S., at 564, the trial judge reasoned that "if a person has the right to receive and possess this material, then someone must have the right to deliver it to him." He concluded that § 1461 could not be validly applied "where obscene material is not directed at children, or it is not directed at an unwilling public, where the material such as in this case is solicited by adults . . . ."

The District Court gave *Stanley* too wide a sweep. To extrapolate from Stanley's right to have and peruse obscene material in the privacy of his own home a First Amendment right in Reidel to sell it to him would effectively scuttle *Roth*, the precise result that the *Stanley* opinion abjured. Whatever the scope of the "right to receive" referred to in *Stanley*, it is not so broad as to immunize the dealings in obscenity in which Reidel engaged here—dealings that *Roth* held unprotected by the First Amendment.

The right Stanley asserted was "the right to read or observe what he pleases—the right to satisfy his intellectual and emotional needs in the privacy of his own home."

394 U. S., at 565. The Court's response was that "a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds." *Ibid.* The focus of this language was on freedom of mind and thought and on the privacy of one's home. It does not require that we fashion or recognize a constitutional right in people like Reidel to distribute or sell obscene materials. The personal constitutional rights of those like Stanley to possess and read obscenity in their homes and their freedom of mind and thought do not depend on whether the materials are obscene or whether obscenity is constitutionally protected. Their rights to have and view that material in private are independently saved by the Constitution.

Reidel is in a wholly different position. He has no complaints about governmental violations of his private thoughts or fantasies, but stands squarely on a claimed First Amendment right to do business in obscenity and use the mails in the process. But *Roth* has squarely placed obscenity and its distribution outside the reach of the First Amendment and they remain there today. *Stanley* did not overrule *Roth* and we decline to do so now.

### III

A postscript is appropriate. *Roth* and like cases have interpreted the First Amendment not to insulate obscenity from statutory regulation. But the Amendment itself neither proscribes dealings in obscenity nor directs or suggests legislative oversight in this area. The relevant constitutional issues have arisen in the courts only because lawmakers having the exclusive legislative power have consistently insisted on making the distribution

of obscenity a crime or otherwise regulating such materials and because the laws they pass are challenged as unconstitutional invasions of free speech and press.

It is urged that there is developing sentiment that adults should have complete freedom to produce, deal in, possess, and consume whatever communicative materials may appeal to them and that the law's involvement with obscenity should be limited to those situations where children are involved or where it is necessary to prevent imposition on unwilling recipients of whatever age. The concepts involved are said to be so elusive and the laws so inherently unenforceable without extravagant expenditures of time and effort by enforcement officers and the courts that basic reassessment is not only wise but essential. This may prove to be the desirable and eventual legislative course. But if it is, the task of restructuring the obscenity laws lies with those who pass, repeal, and amend statutes and ordinances. *Roth* and like cases pose no obstacle to such developments.

The judgment of the District Court is reversed.

*So ordered.*

[For dissenting opinion of Mr. Justice Black, see *post,* p. 379.]

Mr. Justice Harlan, concurring.

I join the opinion of the Court which, as I understand it, holds that the Federal Government may prohibit the use of the mails for commercial distribution of materials properly classifiable as obscene.* The Court today correctly rejects the contention that the recognition in *Stan-*

---

*Of course, the obscenity *vel non* of the materials is not presented at this juncture of the case.

*ley* v. *Georgia,* 394 U. S. 557 (1969), that private possession of obscene materials is constitutionally privileged under the First Amendment carries with it a "right to receive" such materials through any modes of distribution as long as adequate precautions are taken to prevent the dissemination to unconsenting adults and children. Appellee here contends, in effect, that the *Stanley* "right to receive" language, 394 U. S., at 564–565, constituted recognition that obscenity was constitutionally protected for its content. Governmental efforts to proscribe obscenity as such would, on this interpretation, not be constitutional; rather, the power of both the State and Federal Governments would now be restricted to the regulation of the constitutionally protected right to engage in this category of "speech" in light of otherwise permissible state interests, such as the protection of privacy or the protection of children.

That interpretation of *Stanley,* however, is flatly inconsistent with the square holding of *Roth* v. *United States,* 354 U. S. 476, 485 (1957):

> "We hold that obscenity is not within the area of constitutionally protected speech or press."

Either *Roth* means that government may proscribe obscenity as such rather than merely regulate it with reference to other state interests, or *Roth* means nothing at all. And *Stanley,* far from overruling *Roth,* did not even purport to limit that case to its facts:

> "We hold that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime. *Roth* and the cases following that decision are not impaired by today's holding. . . ." 394 U. S., at 568.

In view of *Stanley*'s explicit reaffirmance of *Roth,* I do not read the former case as limiting governmental power

to deal with obscenity to modes of regulation geared to public interests to be judicially assessed as legitimate or illegitimate in light of the nature of obscenity as a special category of constitutionally protected speech. Rather, I understand *Stanley* to rest in relevant part on the proposition that the power which *Roth* recognized in both State and Federal Governments to proscribe obscenity as constitutionally unprotected cannot be exercised to the exclusion of other constitutionally protected interests of the individual. That treatment of *Stanley* is consistent with the Court's approach to the problem of prior restraints in the obscenity area; if government chooses a system of prior restraints as an aid to its goal of proscribing obscenity, the system must be designed to minimize impact on speech which is constitutionally protected. *Blount* v. *Rizzi*, 400 U. S. 410, 416 (1971); *Marcus* v. *Search Warrant*, 367 U. S. 717, 731 (1961). See *Freedman* v. *Maryland*, 380 U. S. 51 (1965).

The analogous constitutionally protected interest in the *Stanley* situation which restricts governmental efforts to proscribe obscenity is the First Amendment right of the individual to be free from governmental programs of thought control, however such programs might be justified in terms of permissible state objectives. For me, at least, *Stanley* rests on the proposition that freedom from governmental manipulation of the content of a man's mind necessitates a ban on punishment for the mere possession of the memorabilia of a man's thoughts and dreams, unless that punishment can be related to a state interest of a stronger nature than the simple desire to proscribe obscenity as such. In other words, the "right to receive" recognized in *Stanley* is not a right to the existence of modes of distribution of obscenity which the State could destroy without serious risk of infringing on the privacy of a man's thoughts; rather, it

is a right to a protective zone ensuring the freedom of a man's inner life, be it rich or sordid. Cf. *West Virginia State Board of Education* v. *Barnette,* 319 U. S. 624, 642 (1943).

MR. JUSTICE MARSHALL, dissenting in No. 133, *post,* p. 363, and concurring in the judgment in No. 534.

Only two years ago in *Stanley* v. *Georgia,* 394 U. S. 557 (1969), the Court fully canvassed the range of state interests that might possibly justify regulation of obscenity. That decision refused to legitimize the argument that obscene materials could be outlawed because the materials might somehow encourage antisocial conduct, and unequivocally rejected the outlandish notion that the State may police the thoughts of its citizenry. The Court did, however, approve the validity of regulatory action taken to protect children and unwilling adults from exposure to materials deemed to be obscene. The need for such protection of course arises when obscenity is distributed or displayed publicly; and the Court reaffirmed the principles of *Roth* v. *United States,* 354 U. S. 476 (1957), *Redrup* v. *New York,* 386 U. S. 767 (1967), and other decisions that involved the commercial distribution of obscene materials. Thus, *Stanley* turned on an assessment of which state interests may legitimately underpin governmental action, and it is disingenuous to contend that Stanley's conviction was reversed because his home, rather than his person or luggage, was the locus of a search.

I would employ a similar adjudicative approach in deciding the cases presently before the Court. In No. 133 the material in question was seized from claimant's luggage upon his return to the United States from a European trip. Although claimant stipulated that he intended to use some of the photographs to illustrate a book which would be later distributed commercially,

the seized items were then in his purely private possession and threatened neither children nor anyone else. In my view, the Government has ample opportunity to protect its valid interests if and when commercial distribution should take place. Since threats to these interests arise in the context of public or commercial distribution, the magnitude of the threats can best be assessed when distribution actually occurs; and it is always possible that claimant might include only some of the photographs in the final commercial product or might later abandon his intention to use any of them.* I find particularly troubling the plurality's suggestion that there is no need to scrutinize the Government's behavior because a "border search" is involved. While necessity may dictate some diminution of traditional constitutional safeguards at our Nation's borders, I should have thought that any such reduction would heighten the need jealously to protect those liberties that remain rather than justify the suspension of any and all safeguards.

No. 534 presents a different situation in which allegedly obscene materials were distributed through the mails. Plainly, any such mail order distribution poses the danger that obscenity will be sent to children, and although the appellee in No. 534 indicated his intent to sell only to adults who requested his wares, the sole safeguard designed to prevent the receipt of his merchandise by minors was his requirement that buyers declare their age. While the record does not reveal that any children actually received appellee's materials, I believe that distributors of purportedly obscene merchandise may be required to take more stringent steps to guard

---

*Moreover, the items seized in this case were only a component of a product which might ultimately be distributed, and viewing them in isolation is inconsistent with the principle that determinations of obscenity should focus on an entire work, see, e. g., Roth v. United States, 354 U. S. 476, 489 (1957).

against possible receipt by minors. This case comes to us without the benefit of a full trial, and, on this sparse record, I am not prepared to find that appellee's conduct was not within a constitutionally valid construction of the federal statute.

Accordingly, I dissent in No. 133 and concur in the judgment in No. 534.