**Frederick C. WILHOIT, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 5710.

District of Columbia Court of Appeals.

Argued May 5, 1971.

Decided July 13, 1971.

---

**506**

Stanley M. Dietz, Washington, D. C., for appellant.

James F. McMullin, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Lester B. Seidel, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, KERN and PAIR, Associate Judges.

PAIR, Associate Judge.

Appellant, then the proprietor of what has been described as the "World's Largest Adult Book Store," sold to an undercover officer of the Metropolitan Police Department a book entitled "The Teeny Suckers."[1] For this reason appellant was arrested and charged with a violation. D.C. Code 1967, § 22–2001 (Supp. III, 1970).[2] After trial without a jury, appellant was found guilty and sentenced to one year imprisonment and a fine of $3,000.

On this appeal the judgment of conviction is challenged on constitutional and other grounds but finding, after an examination of the record, no reversible error, we affirm.

Appellant conceded at oral argument that the 47 photographs in the book, when considered out of context, are "hard-core pornography" within the purview of Morris v. United States, D.C.App., 259 A.2d 337, 341 (1969).[3] He urges, however, that the text of the book is of such intellectual content as to be constitutionally protected, and that even the trial court acknowledged that the book was not utterly without socially redeeming value or literary merit.

The record, however, discloses no such acknowledgment. What appears is that the trial judge, after considering the book as a whole, characterized it as "utterly without any type of redeeming social virtue or value and is beyond peradventure hard-core pornography of the grossest kind," and that "[i]t is pornography—hard-core, outright pornographic filth." Referring to the text of the book, the trial judge said

---

1. Because the book is a part of the record and will be available in the event of further review, it would serve no useful purpose to sully the reports with a detailed commentary. We think it sufficient to say that the book, described by the trial judge as "outright pornographic filth," contains 47 photographs, some in color, depicting the male and female genitalia as they are involved in deviant sexual practices, and seven chapters of text consisting of a series of narratives of debauchery running perhaps the entire gamut of perversion.

2. (a) (1) It shall be unlawful in the District of Columbia for a person knowingly—
 (A) to sell, deliver, distribute, or provide * * * any obscene, indecent, or filthy writing, picture * * * or other article. * * *

3. In *Morris*, we quoted with approval from Donnenberg v. State, 1 Md.App. 591 at 600, 232 A.2d 264, at 269 (1967), where it was said:

* * * [H]ard-core pornography or obscenity per se is obscenity which "focuses predominantly upon what is sexually morbid, grossly perverse and bizarre without any artistic or scientific purpose or justification." There is no desire to portray [it] in pseudo-scientific or "arty" terms. It can be recognized by the insult it offers, invariably, to sex and to the human spirit. It goes substantially beyond customary limits of candor and deviates from society's standards of decency in the representation of the matters in which it deals. It has a patent absence of any redeeming social value; it speaks for itself and screams for all to hear that it is obscene. It is not designed to be a truthful description of the basic realities of life as the individual experiences them but its main purpose [is] to stimulate erotic response. * * * No proof, other than the viewing of it, is required to determine if it is, in fact, obscene.

"[t]he literary ability shown by the writer * * * is not even worthy of a fifth grader." At another point, the trial judge declared that "I searched in vain throughout all of the pages of that book, including the pictures, for anything that * * * could remotely * * * have any type of redeeming social value."

 In obscenity cases involving, as they do, rights springing from the first amendment, a reviewing court is required to make an independent judgment as to whether the material brought into question is, as a matter of law, obscene (Jacobellis v. Ohio, 378 U.S. 184, 188–189, 84 S.Ct. 1676, 12 L.Ed.2d 793, (1964)), and therefore beyond the perimeter of constitutional protection. Roth v. United States, 354 U. S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). To this end, we have made an appraisal of the book and experienced no difficulty whatsoever in concluding, as did the trial court, that the book is "pornographic filth of the grossest kind" without even a modicum of redeeming social value. See United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971); United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L. Ed.2d 822 (1971); Kaplan v. United States, D.C.App., 277 A.2d 477 (decided May 10, 1971); Morris v. United States, *supra.*

It is true, of course, that the trial court, in drawing its conclusions, considered the book as a whole, but that is the very procedure mandated by *Roth.* There, the Supreme Court (354 U.S. at 490, 77 S.Ct. at 1312) approved instructions given to the jury to the effect that:

The test in each case is the effect of the book, picture or publication considered as a whole. * * * The books [and] pictures * * * must be judged as a whole, in their entire context, and you are not to consider detached or separate portions in reaching a conclusion. You judge the * * * pictures and publications which have been put in evidence by present day standards of the community. You may ask yourselves does it offend the common conscience of the community by present-day standards.

 Appellant contends, however, that the trial court, in concluding that "The Teeny Suckers" is hard-core pornography, applied local rather than, as required by Jacobellis v. Ohio, *supra,* national community standards. This contention is not supported by the record but assuming, *arguendo,* that the trial court applied the wrong standards, no more of a reply need be made to the argument than what we declared in Morris v. United States, *supra,* 259 A.2d at page 341:

* * * [W]here obscenity per se is involved, the prosecution is not required to offer any evidence (beyond the material or performance itself) that it is pornographic or obscene or that it is below the national community standards. Womack, [Womack v. United States 111 U.S.App.D.C. 8, 294 F.2d 204] *supra*; Hudson, [Hudson v. United States, D.C.App., 234 A.2d 903] *supra.* In other words, if reasonable men could not differ and they could come to but one conclusion, *i. e.,* that the material or performance is sexually morbid, grossly perverse, and bizarre, without any artistic or scientific purpose or justification, then the Government in its case-in-chief need not offer any evidence of national community standards.

*See also* Kaplan v. United States, *supra.*[4] *Cf.* A Book, etc. v. Attorney General of Com. of Mass., 383 U.S. 413, 420, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), where notwithstanding the obscene character of the book,

4. Where there is a ruling of obscenity per se, the defense is privileged to offer evidence of the national community standard to prove that the material is not obscene for purposes of Roth v. United States, *supra*; Kaplan v. United States, *supra*; Morris v. United States, *supra.*

**508**

the trial judge determined that it possessed a "modicum of literary and historical value" and the Supreme Court refused to disturb such determination.

 Appellant contends finally that because, on the authority of Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), there is now a recognized right to possess obscene materials there is, of necessity, a correlative right to receive such materials. Based upon this reasoning, appellant would have us hold, without regard to Roth v. United States, *supra,* that he has a constitutionally protected right to market and sell to any adult, for enjoyment in the privacy of his home, obscene materials so long as there is no pandering or obtrusive advertising. We decline to do so because substantially the same argument was made to and rejected by the Supreme Court in United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971), and United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). Said the Supreme Court in the latter case at 1408:

> * * * Whatever the scope of the right to receive obscenity adumbrated in *Stanley,* that right, as we said in Reidel, does not extend to one who is seeking, as was Luros here to distribute obscene materials to the public, nor does it extend to one seeking to import obscene materials from abroad, whether for private use or public distribution. As we held in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and reiterated today in *Reidel, ante,* obscenity is not within the scope of first amendment protection. * * *

We hold, therefore, that the appellant had no constitutionally protected right to engage in the business of marketing and selling any such book as "The Teeny Suckers."

Affirmed.