**UNITED STATES of America, Plaintiff,**

v.

**William Harvey KAEHLER, d/b/a Frank Williams, Defendant.**

**Crim. No. 72–Cr–3014–W.**

United States District Court, N. D. Iowa, W. D.

Jan. 22, 1973.

Evan L. Hultman, U. S. Atty., N. D. Iowa, Sioux City, Iowa, for plaintiff.

Frank J. Margolin, G. Daniel Gildemeister, Sioux City, Iowa, Bruce P. Wolfe, Los Angeles, Cal., for defendant.

## ORDER

McMANUS, Chief Judge.

This matter is before the court on defendant's resisted motion for a judgment of acquittal filed December 4, 1972. On November 14, 1972 defendant was found guilty by a jury on the last 4 counts of a 5 count indictment for mailing obscene matter in violation of 18 U. S.C. § 1461.[1] Defendant's sole contention now is that in light of the expert testimony he must be acquitted.

The subject matter of the 4 guilty counts consisted of advertising flyers, pictures and films. Count II involved 16 black and white photographs and 1 movie film in black and white entitled "Black Rape"; Count III, 5 black and white photographs as a "special offer-ing" advertisement for movie films; Count IV, 6 black and white photographs as an advertisement for 13 films; and Count V, 3 movie films in color entitled "Salt and Pepper," "Anal Lovers" and "The Go-Go Dancer."

The material photographically depicted many varieties of sexual activity both homo and hetero and between/among dual and multiple partners. Masturbation, fellatio, cunnilingus, oral, vaginal and anal intercourse are portrayed in toto, ad infinitum and ad nauseam. The camera angle, emphasis and zoom are directed toward a maximum exposure in detail of the genitalia during the sexual gymnastics of the models. One of defendant's ad flyers puffed the material: "Here is [sic] the 'hardcore' film and photo sets which you have been looking for—ACTION!!! where everything is done and shown. . . ."

It does not appear settled whether "obscenity" at the trial level is a question of fact for the jury, a question of law for the trial judge or a mixed question for both. 50 Am.Jur.2d Lewdness, Indecency and Obscenity, § 40, p. 493; 5 ALR 3rd, Obscenity, § 15, p. 1190; *See* Spinar v. United States, 440 F.2d 1241 (8th Cir. 1971). However, it is the court's view that in a criminal case any legal doubt should be resolved in favor of the accused. Hence the court assumed that it, as well as the jury, must make its own determination of whether the material was obscene.

In making this determination, expert testimony may be helpful and some courts have seen fit to require expert testimony due to the complex nature of the question.[2] Here the government did present an expert whose testimony, how-

---

1. Section 1461 provides in part:
 "Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device or substance; . . . .

 . . . . .

 Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier."
 The word "obscene" has been restricted to sexual matters only, according to some authorities. 5 A.L.R.3rd, Obscenity § 5 p. 1175; *See* Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

2. 5 A.L.R.3rd 1194 § 16(a)–(b); United States v. Groner, (5th Cir. 1972, rehearing en banc decision pending); United States v. Klaw, 350 F.2d 155 (2nd Cir. 1965); In Re Giannini, 69 Cal.2d 563, 72 Cal.Rptr. 655, 446 P.2d 535 (1968).

ever, added little support, if any, to its case. The defendant also presented expert testimony to the effect that the material did not appeal to the prurient interest, did not exceed the national community standard of candor, had the redeeming social values of entertainment, curiosity fulfillment, education and therapy for homosexuals and thus was not obscene. However, from the verdict it would appear that the jury elected to disregard the testimony of defendant's expert[3] and now the question is whether the court can or should do likewise.

United States v. Groner, *supra*, relied upon heavily by defendant, sets out the various courts which have struggled with the question of the necessity of expert testimony. In *Groner* the court concluded that without expert testimony on the complicated issues of "community standards" and "prurient interest," the jury and the court could do no more than speculate and thus a conviction could not be allowed to stand. However, *Groner* does not state that expert testimony is necessary in all cases and seems to exclude the necessity in those cases which could be classified as "hard-core pornography." The Second Circuit utilized a similar rationale in United States v. Wild, 422 F.2d 34 (2nd Cir. 1969), and the Ninth in United States v. Young, 465 F.2d 1096 (9th Cir. 1972).[4] Some courts have even suggested that under the present state of the Supreme Court's pronouncements only "hard-core" material is proscribed as obscenity by the *Roth* test. 50 Am.Jur. supra § 5, p. 456 et seq.; Luros v. United States, 389 F. 2d 200, 205 (8th Cir. 1968).

A threshold problem with this approach, however, is how does one define "hard-core pornography"?[5] While the Supreme Court has blessed America with its definition of "obscenity" in *Roth*, it has been unable to define "hard-core pornography" although some members have tried.[6]

Thus to resolve the matter at hand this court has been forced to enter the "obscenity thicket" or, perhaps, more aptly described as "obscenity morass." Examination of the legions of cases on all levels of state and federal courts that have tried to apply the *Roth* tripartite test for obscenity leads this tribunal to one conclusion: the *Roth* test, as well as any suggested tests for hard-core pornography, are hopelessly confusing, vague, mind-miring, and solely subjec-

3. The court instructed the jury to give the testimony of experts "such weight as you think it deserves; and you may reject it entirely if you conclude that the reasons given in support of the opinion are unsound."

4. In an early case in the post *Roth* evolution of obscenity law, Alexander v. United States, 271 F.2d 140 (8th Cir. 1959), expert testimony was presented only by the defendant. The court in upholding the conviction stated that "the issue here involved is not so complex that it can be said that the average juror is not capable of applying the obscenity test to the books in controversy."

5. Warren, C. J. recognized the problem in his dissent in Jacobellis v. Ohio, 378 U.S. 184, 201, 84 S.Ct. 1676, 1685, 12 L.Ed.2d 793 (1963):
"We are told that only 'hard core pornography' should be denied the protection of the First Amendment. But who can define 'hard core pornography'

with any greater clarity than 'obscenity'? And even if we were to retreat to that position, we would soon be faced with the need to define that term just as we now are faced with the need to define 'obscenity.'"

6. Harlan, J. in Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1965):
"To be sure, that rubric ['hard-core pornography'] is not a self-executing standard, but it does describe something that most judges and others will 'know . . . when [they] see it' (Stewart, J., in Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793) and that leaves the smallest room for disagreement between those of varying tastes. . . . I would characterize as 'hard-core' that prurient material that is patently offensive or whose indecency is self-demonstrating."
See also 50 Am.Jur.2d supra § 5 p. 458 et seq. and *See* United States v. Klaw, 350 F.2d 155 (2d Cir. 1965).

tive standards devoid of predictability.[7] Judicial taste appears to be the real criterion. "If it turns me on, it's smut"![8] It is inconceivable to this court that such encroachment on sacred 1st amendment rights could so long withstand the challenge of equal protection.

 However, regardless of this court's opinion of the *Roth* test, as a lower federal court it is bound by stare decisis.[9] While this judge does not comprehend the *Roth* test, it does appear that at last count a transient majority of the Supreme Court thinks it does. Therefore, this court is driven to the conclusion that if the material involved in the 4 counts herein is neither "obscene" nor "hard-core pornography" as defined by *Roth*, et al., then nothing is, experts to the contrary notwithstanding.

It is therefore ·

Ordered

Denied.

7. This court agrees wholeheartedly with Black, J.'s dissents in Ginzburg v. United States, 383 U.S. 463, p. 480, 86 S.Ct. 942, p. 953, 16 L.Ed.2d 31 (1965) :

"A case-by-case assessment of social values by individual judges and jurors is, I think, a dangerous technique for government to utilize in determining whether a man stays in or out of the penitentiary.

My conclusion is that certainly after the fourteen separate opinions handed down in these three cases today no person, not even the most learned judge much less a layman, is capable of knowing in advance of an ultimate decision in his particular case by this Court whether certain material comes within the area of 'obscenity' as that term is confused by the Court today. . . . ";

and in United States v. 37 Photographs, 402 U.S. 363, p. 379, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) wherein he stated:

"In my view the First Amendment denies Congress the power to act as censor and determine what books our citizens may read and what pictures they may watch.

I particularly regret to see the Court revive the doctrine of Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), that 'obscenity' is speech for some reason unprotected by the First Amendment. As the Court's many decisions in this area demonstrate, it is extremely difficult for judges or any other citizens to agree on what is 'obscene.' Since the distinctions between protected speech and 'obscenity' are so elusive and obscure, almost every 'obscenity' case involves difficult constitutional issues. After *Roth* our docket and those of other courts have constantly been crowded with cases where judges are called upon to decide whether a particular book, magazine, or movie may be banned. I have expressed before my view that I can imagine no task for which this Court of lifetime judges is less equipped to deal. . . . In view of the difficulties with the *Roth* approach, it is not surprising that many recent decisions have at least implicitly suggested that it should be abandoned. . . . Despite the proved shortcomings of *Roth*, the majority in *Reidel* [United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed. 2d 813] today reaffirms the validity of that dubious decision. Thus, for the foreseeable future this Court must sit as a Board of Supreme Censors, sifting through books and magazines and watching movies because some official fears they deal too explicitly with sex. I can imagine no more distasteful, useless, and time-consuming task for the members of this Court than perusing this material to determine whether it has 'redeeming social value.' This absurd spectacle could be avoided if we would adhere to the literal command of the First Amendment that 'Congress shall make no law . . . abridging the freedom of speech, or of the press . . . .' "

8. Cartoon, The New Yorker, November 4, 1972, p. 130.

9. Judge Lumbard concurring in United States v. A Motion Picture Film, 404 F. 2d 196, 200 (2d Cir. 1968) :

"Our duty as an inferior federal court is to apply, as best we can, the standards the Supreme Court has decreed with regard to obscenity. That task, to be sure, is not altogether easy in light of the divergence of views within the Court and the consequent multiplicity of opinions; . . . ."