The WESTERN CORPORATION,
Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Nov. 18, 1977.

Joseph S. Freeland, Paducah, for appellant.

Ed W. Hancock, Atty. Gen., Robert V. Bullock, Asst. Atty. Gen., Frankfort, for appellee.

REED, Justice.

Appellant, The Western Corporation, and two of its employees, were charged with four counts of exhibiting an allegedly obscene motion picture entitled "Deep Throat." The jury convicted The Western Corporation on all counts and fixed as penalty a fine of $1,000 on each count. The jury was unable to agree concerning the guilt of the two employees, the manager of the theatre and the projectionist, and the charges against them were subsequently dismissed on motion of the prosecution.

The Western Corporation filed motion for appeal under KRS 21.140(2). We have delayed disposition because of the pendency of several federal cases posing federal constitutional issues before the Supreme Court of the United States. Those cases have now been decided. We have agreed to grant the motion for an appeal, but we affirm the judgment for the reasons later stated.

Western, the corporate operator of a motion picture theatre in Paducah, Kentucky, was tried and convicted for violation of KRS 436.101, the state obscenity statute in effect at the time of the exhibition of the motion picture. This statute has undergone legislative revision and has now been succeeded by KRS 531.010, a part of the Kentucky Penal Code.

The evidence for the prosecution established that on April 12, 1974, the Judge of the Paducah Police Court, accompanied by two police officers, an attorney for the City of Paducah, and an assistant Commonwealth's Attorney, went to the Fourth Street Cinema, operated by Western, and watched the showing of the film "Deep Throat" in its entirety. At the conclusion of the showing of the film, police officer Eberhardt signed and swore to an affidavit for a warrant for the seizure of the film.

The police judge immediately issued the warrant which was forthwith executed by the officer.

The next day, April 13, officer Eberhardt went again to the Fourth Street theatre where another print or copy of "Deep Throat" was being shown and, after viewing the entire picture, made an arrest, and seized another copy of the film. On April 22, officer Eberhardt entered the theatre and viewed approximately 15 minutes of the film "Deep Throat." He determined that it was identical to a 15-minute portion of the film he had seen on April 12 and April 13, 1974, and made an arrest. Later in the day, on April 22, 1974, Eberhardt again went to the theatre. This time he saw approximately 18 minutes of the subject film which he determined was identical to portions of the film he had seen on April 12 and 13 in its entirety. Eberhardt again made an arrest.

■ The movie "Deep Throat" was introduced in evidence and has been viewed by this court. It contains repeated scenes of actual sexual intercourse, anal sodomy, fellatio and cunnilingus. The story line consists entirely of the sexual activities of Miss Linda Lovelace. We failed to find any serious literary, artistic, political or scientific value in this motion picture. We, therefore, agree with the jury's conclusion that this exhibited material was obscene and violative of contemporary community standards under the tests prescribed in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

■ Western argues that KRS 436.101 was unconstitutional under the First and Fourteenth Amendments to the Constitution of the United States. This argument is based on the assertion that KRS 436.101 did not comply with the standards prescribed in *Miller v. California, supra*. Although Western asserts that the Supreme Court of the United States did not intend the *Miller* standards to be prospective only, that contention has been rejected by the Supreme Court in an appeal concerning the same motion picture, which was the subject of a federal prosecution in Kentucky. In *Marks*

*v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (decided March 1, 1977), the Supreme Court held that part (c) of the *Miller* test was not retroactive, but that part (b) of the same test, wherein the court enumerated specific categories of material, did not purport to make criminal, for the purpose of the federal statute proscribing the exhibition of obscene material, conduct which had not previously been thought criminal. We have no difficulty in concluding that our previous decisions concerning the constitutionality of KRS 436.101 in light of the decision in *Miller* were correct. In *Hall v. Commonwealth ex rel. Schroering*, Ky., 505 S.W.2d 166 (1974), we construed our statute as consistent with the explications in *Miller*: "The hard core pornography with which we are here concerned has consistently been held by this court to constitute obscene material within the proscription of the statute prior to our decision in *Hall*." *Keene v. Commonwealth*, Ky., 516 S.W.2d 852, 855 (1974).

In *Smith v. United States*, 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (decided May 23, 1977), the Supreme Court rejected a contention that the federal obscenity statute, 18 U.S.C. § 1461, was unconstitutionally vague. The court held that the judicial constructions of the statute flowed directly from its decisions in *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), *Miller v. California, supra, United States v. Reidel*, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971), and *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

■ Our decisions cited herein make it quite clear that appellant was forewarned in sufficiently specific terms that the depiction in this film of the actual sexual conduct under the circumstances presented was proscribed because it was hard core pornography.

Certainly, we were more specific than was the concerned state court in *Ward v. Illinois*, 767 U.S. 431, 97 S.Ct. 2085, 52 L.Ed.2d 738, which was decided by the Supreme Court of the United States on June

9, 1977. In that case the Supreme Court's majority opinion declared: "We agree with the Illinois Supreme Court, however, that 'in order that a statute be held overbroad the overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." ' " The Supreme Court of the United States held that since it was plain enough from prior cases decided by the Illinois court and from its response to *Miller* that the state court recognized the limitations on the kinds of sexual conduct which could not be represented or depicted under the obscenity laws, the Illinois statute could not be held to be unconstitutionally overbroad. We, therefore, again reject the contention that KRS 436.101, as it was construed by the decisions of this court prior to the time of the commission of the offenses by Western, was unconstitutional under either the First or Fourteenth Amendments to the Constitution of the United States.

■ Western's next complaint is that the procedure used for seizure of the film was unlawful. The same procedure was approved and recommended in *Heller v. New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973). A neutral magistrate viewed a public showing of the film and then issued written authority to a police officer to seize the film as evidence of a violation of the obscenity statute. We are not impressed with Western's argument that the seizure violated the requirements of Section 10 of the Constitution of Kentucky. Although we entertain a real doubt that public exhibitions of films where admission is charged and there is no legitimate expectation of privacy are within the ambit of the protection of privacy policy of Section 10 of our state constitution, we hold that the specific affidavit of officer Eberhardt met the requirements of Section 10, if it be conceded, arguendo, that Western's operation was within the scope of protection at the time of the seizure.

■ Western asserts that there was not sufficient evidence from which the jury could conclude that the film seen by officer Eberhardt on April 13 and twice on April 22 was identical to the film seen and seized on April 12, 1974. Eberhardt testified that the film seen on April 13, 1974, in its entirety was identical to that seen on April 12, 1974, and the film segments seen on April 22 were identical to those segments of the film introduced in evidence at the trial. The evidence was established that the marquee or billboard in front of the theatre on each of these occasions showed that the film "Deep Throat" would be shown. We think this evidence was sufficient to withstand a motion for directed verdict. In common human experience, an advertised motion picture film generally is shown as advertised as is usual with things of that nature. It would appear that the widely advertised motion picture film given the circumstances presented here was shown in this theatre on these occasions, and there is no claim to the contrary.

Western also complains that the instructions were erroneous. The first contention concerning the inadequacy of the instructions is bottomed on the proposition that the trial court should not have permitted separate convictions on the second, third and fourth counts for violation of the obscenity statute. Western indicates that while a $1,000 fine for the first count might be sustainable upon a conviction, nevertheless, for the second, third and fourth proven instances of violation of the statute, he should have been fined only $500 instead of $1,000. KRS 436.101(2) related to punishment and provided that violations of the statutes are punishable by fine of not more than $1,000 or imprisonment for not more than six months, or both, for the first offense, "plus $5.00 for each additional unit of material coming within the provisions of this chapter, which is involved in the offense, not to exceed $10,000 . . . plus one day for each additional unit of material coming within the provisions of this chapter and which is involved in the offense, such basic maximum and additional days not to exceed 360 days in the county jail, or by both such fine and imprisonment."

■ A reading of the statute makes it abundantly clear that each proven occur-

rence of the showing of an obscene motion picture was a separate violation of law and was punishable as such. If, on the occasion of the exhibition of "Deep Throat", Western had scheduled a double or triple feature, a different question might be presented; but these were entirely separate exhibitions of this motion picture for which admission was charged. These · exhibitions clearly are separate offenses under KRS 436.101(2).

The second claimed error in the instructions is so devoid of merit as not to warrant discussion. The instructions as given clearly and specifically followed the *Miller* standards and the standards delineated by this court at the time the offenses were committed.

█ Western's final complaint is addressed to a provision of the final judgment entered in which the trial court adjudged that if there was no successful appeal the film was ordered to be destroyed. This provision is plainly consistent with KRS 436.101(9) which provided that upon conviction of the accused the court could, when the conviction becomes final, order the obscene matter destroyed. There was an additional provision in the order that recited that the movie Deep Throat "should not be shown any further in this County." Western does not seriously argue that this prohibition is inappropriate as it relates to it, assuming, of course, the conviction was proper. The complaint Western makes is that the prohibition is overbroad in that it apparently applies to all persons and not merely those who were parties to the case.

█ The jury not only convicted Western as required by the statute, it found the film obscene. The only party to this appeal was properly convicted, as we have determined. We will not indulge in speculation concerning the overbreadth of the provision against showing the film and the parties to whom that prohibition applies. Certainly, Western has no standing to question the operation and validity of the questioned portion of the final order.

The judgment is affirmed.

All concur.