STUCKY, Judge
(dissenting):
I disagree with the majority’s holding that 18 U.S.C. § 1466A(b)(l) (2006) is constitutional as applied. Where a statute seeks to prohibit constitutionally protected conduct, the statute cannot be examined in a vacuum. This Court must consider how the relevant statutory provisions interact with each other, and examine this interaction in light of the Constitution, Supreme Court precedent, and the facts and circumstances of the case. In this case, Appellant was convicted only of mere possession of obscenity — conduct that is constitutionally protected in some circumstances under Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Therefore, it is necessary to address the applicability of Stanley to determine the constitutionality of § 1466A(b)(l) as applied to Appellant. I believe Stanley applies to the barracks under these circumstances, and would therefore hold that § 1466A(b)(l) is unconstitutional as applied to Appellant.
I.
Generally, obscenity is not protected by the First Amendment. Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Specifically, the Supreme Court has held that the production, receipt, transportation, and distribution of obscene materials are not constitutionally protected. United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971); United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 376, 91 S.Ct. 1416, 28 L.Ed.2d 822 (1971); United States v. Orito, 413 U.S. 139, 142, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973). However, mere possession of obscene material in one’s home is constitutionally protected. Stanley, 394 U.S. at 559, 89 S.Ct. 1243.
In Stanley, federal and state agents secured a warrant to search Stanley’s home to investigate alleged bookmaking activities. Id. at 558, 89 S.Ct. 1243. They found little evidence of bookmaking, but found “obscene” films in a bedroom desk drawer. Id. Stanley was subsequently convicted of knowingly possessing obscene matter in violation of Georgia law. Id. The Supreme Court overturned his conviction:
Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one’s own home. If the First Amendment *78 means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch.
Id. at 565, 89 S.Ct. 1243. Stanley has been repeatedly limited to mere possession within the “home.” See, e.g., Smith v. United States, 431 U.S. 291, 307, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977). The threshold issue in this case is whether a shared barracks room may ever constitute a “home” under Stanley.
The majority bases its holding that Stanley does not apply in the barracks on Fourth Amendment grounds: a servicemember does not have the same expectation of privacy in a barracks room as he would in a civilian home. While I agree as a general matter that the barracks does not provide the same expectation of privacy as a civilian home, I do not agree that a servieemember’s privacy interest in a shared barracks room must be coextensive with the privacy interest in a home to trigger the protections of Stanley, and I cannot reconcile the majority’s holding with this Court’s Fourth and First Amendment jurisprudence.[1]
Aside from a limited inspection regime and the need for discipline and military readiness, a servicemember has Fourth Amendment protections in a shared barracks room. See United States v. Thatcher, 28 M.J. 20 (1989) (recognizing that an inspection regime and the need for military fitness and readiness does not preclude a servicemember’s reasonable expectation of privacy in the barracks). Undoubtedly, these military needs limit the application of some Fourth Amendment rights in the barracks. See United States v. McCarthy, 38 M.J. 398, 403 (C.M.A.1993) (“the threshold of a barracks/dormitory room does not provide the same sanctuary as the threshold of a private home”). However, this Court has acknowledged that “[i]n the military context, the barracks or dormitory often serves as the servicemember’s residence, his or her home.” United States v. Macomber, 67 M.J. 214, 219 (C.A.A.F.2009). To this end, this Court has specifically held that servicemembers have some Fourth Amendment protections in a shared barracks. See, e.g., United States v. Conklin, 63 M.J. 333 (C.A.A.F.2006) (holding that an accused has a privacy interest in files on his personally owned computer); United States v. Middleton, 10 M.J. 123 (C.M.A.1981) (recognizing that a locked wall locker is protected by the Fourth Amendment). Indeed, a servicemember’s Fourth Amendment protections are at their apex when it comes to secured personal property within the barracks.
This Court has also upheld a servicemem-ber’s First Amendment rights as long as the speech does not have a “direct and palpable connection” to “the military mission or military environment.” See United States v. Wilcox, 66 M.J. 442, 448-49 (C.A.A.F.2008) (finding a conviction for making anti-government, disloyal, and racially intolerant statements online legally insufficient under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2006)).
Like Stanley, this case lies at the intersection of First and Fourth Amendment rights. Appellant was charged with conduct protected by the First Amendment — mere posses *79 sion — in a place expressly protected by the Fourth Amendment — a password-protected computer. Whatever the limits of constitutional protections in the barracks are,[2] where, as here, a servicemember’s First and Fourth Amendment rights intersect, the barracks are most like the “home” envisioned by the Supreme Court in Stanley.
The majority attempts to distinguish the protections identified above from “the discrete and special privacy interest in one’s home recognized by Stanley.” This “discrete and special privacy interest” is not separate from a servicemember’s First and Fourth Amendment rights; rather, it is just an acknowledgment that in certain circumstances the protections overlap:
[The] right to receive information and ideas, regardless of their social worth, is fundamental to our free society. Moreover, in the context of ... a prosecution for mere possession of [obscenity] in the privacy of a person’s own home — that right takes on an added dimension ... the right to be free, except in very limited circumstances, from unwanted governmental intrusions into one’s privacy.
Stanley, 394 U.S. at 564, 89 S.Ct. 1243 (internal citation omitted).
These constitutional protections cannot be overcome, as the majority asserts, by a lawful warrant authorizing a search for contraband. Stanley does not address the authorization to search for such materials in the home. See Stanley, 394 U.S. at 568, 89 S.Ct. 1243 (overturning Stanle/s conviction even though there was a lawful warrant to search for contraband). As in Stanley, a lawful warrant may grant access to search a private place, but it cannot negate Stanley’s prohibition on criminalizing mere possession of obscene materials.[3]
Even assuming, as the majority does, that the application of Stanley depends entirely on the Fourth Amendment, I would hold that Stanley applies in the barracks under these circumstances. Bowersox, 72 M.J. at 76 n. 7. The Constitution does not end at the barracks door, and the Fourth Amendment applies to the area at issue — a password-protected computer in a shared barracks room. Here we are dealing with private materials in a private space that, by virtue of password protections, was inaccessible by others. Unlike choosing a roommate, cooking, inspections, overnight guests, or apprehension by military police, the “use” of the barracks room at issue did not implicate the shared or command aspects of the barracks room — the aspects that make a barracks room less like a “home.”[4] Rather, this case only involves aspects of a barracks room that are most like a “home” and are specifically protected under the Fourth Amendment.
Assuming Stanley applies, the next question is whether § 1466A(b)(l) is unconstitutional as applied to Appellant.
II.
Possession of actual child pornography functions as an exception to the constitutional *80 protections in Stanley and Miller because of the dangers it presents to real children. See New York v. Ferber, 458 U.S. 747, 757-61, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); Osborne, 495 U.S. at 109, 110 S.Ct. 1691. To further protect children, Congress passed the Child Pornography Prevention Act of 1996 (CPPA), which criminalized aspects of child pornography, including virtual child pornography. 18 U.S.C. § 2256. In 2002, the Supreme Court held that the CPPA was over-broad and unconstitutional because it banned speech that was neither actual child pornography covered by Ferber, nor obscene under Miller. Ashcroft v. Free Speech Coalition, 535 U.S. 234, 239-40, 258, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). After Ashcroft, to “restore the government’s ability to prosecute child pornography offenses successfully” Congress remedied the error in the CPPA and enacted new laws to address virtual child pornography. S.Rep. No. 108-2, at 1, 4-6; PROTECT Act, Pub.L. No. 108-21, § 504, 117 Stat. 650, 680-82 (2003) (codified as amended at 18 U.S.C. § 1466A).
Appellant was charged with violating 18 U.S.C. § 1466A(b)(l), which prohibits knowing possession of “a visual depiction of any kind” that “depicts a minor engaging in sexually explicit conduct” and is obscene. The statute expressly provides that it “is not a required element of any offense under this section that the minor depicted actually exist.” § 1466A(c). Five circumstances trigger application of the statute. § 1466A(d)(l)-(5). The first four involve communicating or transporting virtual child pornography through interstate or foreign commerce by any means, including a computer. § 1466A(d)(l)-(4).
If Appellant had been charged under any of the first four triggering circumstances, he would not be entitled to the protections of Stanley because he would have been charged with activity beyond mere possession. Indeed, besides Stanley, all of the cases cited by the majority to support its holding involve conduct beyond mere possession, or involve possession of actual child pornography — both of which raise different constitutional issues. However, the triggering circumstance charged in this case was that Appellant committed the offense in the barracks which is “in the special maritime and territorial jurisdiction of the United States.” § 1466A(d)(5). In other words, Appellant was charged with the knowing possession of virtual child pornography in the special maritime and territorial jurisdiction of the United States.
While Congress does have the full and exclusive authority to legislate for the special maritime and territorial jurisdiction of the United States and therefore the barracks, it cannot legislate without regard for constitutional rights recognized by the Supreme Court. I can find .no support, in law or logic, for the proposition, implied by § 1466A(d)(5), that Stanley does not apply in the special maritime and territorial jurisdiction of the United States. Even if Congress intended to criminalize the depictions at issue, where an accused is only convicted of constitutionally protected conduct, the fact that the statute expressly provides that it “is not a required element of any offense under this section that the minor depicted actually exist” does not save the statute.[5] § 1466A(c). Where there is tension between a constitutional right and a statute, the constitution trumps. See Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 180, 2 L.Ed. 60 (1803) (“a law repugnant to the constitution is void”).
I may not agree with Appellant’s choice of reading material, but he was charged only with constitutionally protected conduct, in a place deserving of constitutional protection, and I would therefore reverse the decision of the United States Army Court of Criminal Appeals.

. I agree with the majority that the Supreme Court has wavered regarding the import of the constitutional principles underlying Stanley. See United States v. 12 200-Ft. Reels of Super 8mm. Film, 413 U.S. 123, 126, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973) (suggesting that Stanley was rooted in the Fourth Amendment rather than the First Amendment); but see Osborne v. Ohio, 495 U.S. 103, 108 n. 3, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) ("We have since indicated that our decision in Stanley was 'firmly grounded in the First Amendment.' ”) (citing Bowers v. Hardwick, 478 U.S. 186, 195, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), overruled on other grounds by Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003)). While the Supreme Court has gone back and forth about the main constitutional support for Stanley, looking at the plain language of the opinion and decades of application, Stanley is now what it originally was — an opinion rooted in both the First and Fourth Amendments. Which amendment was more central to the holding of Stanley is not dispositive of any one case; rather, the relative importance of each amendment to a particular case will vary depending on the facts and circumstances. In other words, Stanley rests on the intersection of First and Fourth Amendment rights, and it is necessary to consider both aspects of Stanley to determine its applicability — specifically, whether the shared barracks room in this case constitutes a "home” under Stanley.

. To be clear, I do not believe that Stanley applies in the barracks under every circumstance. For example, the constitutional protections outlined in Stanley would not extend to hanging obscene posters in a barracks dormitory because of the potential effect on military discipline.

. The cases the majority cites to support this proposition are inapposite as they address searches for materials that are not constitutionally protected, such as contraband and child pornography. United States v. Bowersox, 72 M.J. 71, 76-77 (C.A.A.F.2013).

. The fact that Appellant invited his roommate, SPC Bryant, over to his side of the room and showed him an image on his computer does not negate Appellant’s privacy interest in everything else on the computer. Furthermore, Appellant did not expose SPC Biyant to any of the obscene materials at issue; Appellant apparently only showed him the images he was found not guilty of possessing. Where an individual voluntarily looks at something when asked by his roommate, the risk of exposure to obscene materials is no greater than in a college dormitory or other civilian roommate situation and it certainly does not "intrude upon the privacy of the general public.” Bowersox, 72 M.J. at 76-77 (ellipsis and quotation marks omitted) (quoting Stanley, 394 U.S. at 567, 89 S.Ct. 1243). It cannot be the case that the “home” envisioned in Stanley excludes shared living situations because of an increased "risk that obscene materials will be viewed by those who do not wish to view them.” Id.

. I agree with Part III.A of the majority’s decision insofar as it suggests that the combination of § 1466A(a)(l) and § 1466A(c) is not constitutionally deficient. Bowersox, 72 M.J. at 74-75; see also United States v. Whorley, 550 F.3d 326 (4th Cir.2008) (finding the accused’s conviction under § 1466A(a)(l) for the receipt of obscene depictions of minors constitutional). However, unlike the charge for receiving obscenity under § 1466A(a)(l) in Whorley, Appellant was charged with constitutionally protected possession under § 1466A(b)(1). Therefore, the Whorley court's analysis of § 1466A(c) is distinguishable to the point of irrelevance, and this Court must look specifically to the interaction between § 1466A(b)(l) and (c).