

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-8-2005

# USA v. Extreme Assoc Inc

Precedential or Non-Precedential: Precedential

Docket No. 05-1555

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Extreme Assoc Inc" (2005). *2005 Decisions.* Paper 26.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/26

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 05-1555

UNITED STATES OF AMERICA,

Appellant

v.

EXTREME ASSOCIATES, INC.;
ROBERT ZICARI, aka ROB BLACK;
JANET ROMANO, aka LIZZIE BORDEN

———————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No.: 03-cr-00203
District Judge: The Honorable Gary L. Lancaster

———————————

Argued October 19, 2005

Before: SMITH, STAPLETON, and NYGAARD,
*Circuit Judges*

(Filed: December 8, 2005)

_____

Counsel:

Mary Beth Buchanan (Argued)
Office of United States Attorney
700 Grant Street
Suite 400
Pittsburgh, PA 15219

Christine A. Sanner
Office of United States Attorney
17 South Park Row
Room A330
Erie, PA 16501
            *Counsel for Appellant*

H. Louis Sirkin (Argued)
Jennifer M. Kinsley
Sirkin, Penales, Schwartz
105 West Fourth Street
Suite 920
Cincinnati, OH 45202-2776
            *Counsel for Appellees*

_____

OPINION

_____

SMITH, *Circuit Judge*.

This appeal requires us to decide whether the District Court erred by dismissing an indictment brought against Extreme Associates, Inc. and its proprietors under 18 U.S.C. §§ 1461 and 1465, which criminalize the commercial distribution of obscene materials, on the ground that those statutes violate the privacy rights of Extreme Associates' customers under the Fifth Amendment doctrine of substantive due process. Because we conclude that the District Court improperly set aside applicable Supreme Court precedent which has repeatedly upheld federal statutes regulating the distribution of obscenity in the face of both First Amendment and substantive due process attacks, we will reverse the judgment of the District Court.

I.

A.

The parties do not dispute the relevant facts. Extreme Associates, Inc. is a California corporation owned and operated by Robert Zicari and Janet Romano.[1] Extreme Associates maintained a website through which it engaged in the business of producing, selling, and distributing obscene video tapes,

---

[1]We hereinafter refer to Extreme Associates, Inc., Mr. Zicari, and Ms. Romano collectively as "Extreme Associates."

DVDs, and computer files in interstate commerce.[2]

As part of an investigation, undercover U.S. Postal Inspectors visited the Extreme Associates website. The Inspectors found that the website was divided into two sections, one accessible to the general public, and one available to members only. Members were required to register and to pay $89.95 to gain access to the website for ninety days. From the members-only portion of the website, a member, *inter alia*, could download and view video clips. The general public could order tapes for delivery by mail through the public portion of the website. In the course of the investigation, Postal Inspectors purchased certain videotapes from the public section of the website, which Extreme Associates delivered through the U.S. mails to undercover addresses. Inspectors also joined the members-only section of the website and downloaded and viewed several video clips.

On August 6, 2003, a federal grand jury returned a ten-count indictment against Extreme Associates. The first count was a conspiracy charge under 18 U.S.C. § 371[3] charging

_____

[2]For purposes of the motion to dismiss in the District Court, Extreme Associates stipulated that the material available on its website is legally obscene.

[3]18 U.S.C. § 371 provides in pertinent part:

Extreme Associates with conspiring to violate 18 U.S.C. §§

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371.

1461[4] and 1465[5] by distributing obscene material through the

[4]Section 1461 states in relevant part:

> Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance . . . [i]s declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier. Whoever knowingly uses the mails for the . . . delivery of anything declared by this section . . . to be nonmailable . . . shall be fined under this title or imprisoned not more than five years, or both, for the first such offense, and shall be fined under this title or imprisoned not more than ten years, or both, for each such offense thereafter.

18 U.S.C. § 1461.

[5]Section 1465 states in relevant part:

> Whoever knowingly transports or travels in, or uses a facility or means of, interstate or foreign commerce or an interactive computer service . . . in or affecting such commerce for the purpose of sale or distribution of any obscene, lewd, lascivious, or filthy book, pamphlet, picture, film, paper, letter, writing, print, silhouette, drawing, figure, image, case, phonograph recording, electrical transcription or other article capable of

6

mails and over the Internet. The remaining counts charged substantive violations of §§ 1461 and 1465 and alleged particular acts of distributing obscene materials in interstate commerce via the mails and the Internet.

On October 9, 2003, Extreme Associates filed a motion to dismiss the indictment on the ground that the "federal obscenity statutes"[6] violate the right to privacy protected by the

> producing sound or any other matter of indecent or immoral character, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 1465.

[6]Although the Government brought no charges in this case under 18 U.S.C. § 1462, Extreme Associates' Motion to Dismiss attacked the constitutionality of that statute as well, and the District Court struck it down. We hereinafter refer to §§ 1461, 1462, and 1465 collectively as the "federal statutes regulating the distribution of obscenity" or the "statutes." Section 1462 states in relevant part:

> Whoever brings into the United States . . . or knowingly uses any express company or common carrier or interactive computer service . . . for carriage in interstate or foreign commerce – (a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper,

7

Due Process Clause of the Fifth Amendment. After briefing and a hearing, the District Court declared the federal statutes regulating the distribution of obscenity unconstitutional as applied to Extreme Associates and dismissed the indictment in a Memorandum and Order on January 20, 2005. The Government appealed the dismissal.

B.

The analytical path taken by the District Court in dismissing the indictment warrants particular attention. The District Court began by concluding that Extreme Associates had

letter, writing, print, or other matter of indecent character; or (b) any obscene, lewd, lascivious, or filthy phonograph recording, electrical transcription, or other article or thing capable of producing sound . . . or [w]hoever knowingly takes or receives, from such express company or other common carrier or interactive computer service . . . any matter or thing the carriage or importation of which is herein made unlawful – [s]hall be fined under this title or imprisoned for not more than five years, or both, for the first such offense and shall be fined under this title or imprisoned for not more than ten years, or both, for each such offense thereafter.

18 U.S.C. § 1462.

derivative standing to challenge the federal statutes regulating the distribution of obscenity on behalf of its customers. Turning to the merits, the Court noted that in *Stanley v. Georgia*, 394 U.S. 557 (1969), the Supreme Court recognized the First Amendment right of an individual to possess, read, observe, and receive obscene materials in the privacy of that individual's home, and that such a right is "fundamental" under the Constitution. Because the *Stanley* Court also spoke of a privacy right having to do with Stanley's home, the District Court opined that the case "represents a unique intersection between the substantive due process clause's protection of personal liberty and privacy and the First Amendment's protection of an individual's right to receive, and consider, [sic] information and ideas."

The District Court acknowledged that the Supreme Court has refused to strike down the federal statutes regulating the distribution of obscenity, or to recognize, as a corollary to the right recognized in *Stanley*, a First Amendment right to distribute obscene material. The District Court, however, adopted the position advocated by Extreme Associates that *Stanley* and its progeny, i.e., *United States v. Reidel*, 402 U.S. 351 (1971), *United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363 (1973), *United States v. 12 200-Ft. Reels of Super 8mm Film*, 413 U.S. 123 (1973), *United States v. Orito*, 413 U.S. 139 (1973), and *Paris Adult Theatre I v. Slaton*, 413 U.S. 49 (1973), were decided solely on First Amendment grounds rather than on privacy grounds under the Substantive Due Process Clause. The

District Court also agreed with Extreme Associates that the above cases are factually distinguishable from the case at bar in that they dealt either with the importation of obscene material from abroad or involved methods of distribution that were more "public" than the Internet transmissions at issue here.

Noting that Extreme Associates sought to challenge the statutes not on its own behalf but on behalf of the individual privacy rights of its customers, the District Court concluded that because "[n]either the Supreme Court nor the Court of Appeals for the Third Circuit has considered a substantive due process challenge to the federal obscenity statutes by a vendor arguing that the laws place an unconstitutional burden . . . on an *individual's* fundamental right to possess and view what he pleases in his own home," Extreme Associates' challenge was not precluded by the *Reidel/Orito* line of cases. According to the District Court, the instant case is controlled instead by *Griswold v. Connecticut*, 381 U.S. 479 (1965), *Roe v. Wade*, 410 U.S. 113 (1973), and their progeny.

Because Extreme Associates based its substantive due process challenge on the existence of a "fundamental" right, the District Court applied strict scrutiny to the federal statutes regulating the distribution of obscenity.[7] The Court concluded

---

[7]To survive strict scrutiny, a statute must be narrowly tailored to further a compelling state interest. *See*, *e.g.*, *Griswold v. Connecticut*, 381 U.S. 479, 497-98 (1965) (Goldberg, J.,

10

that, under such heightened scrutiny, the statutes could not stand as applied to Extreme Associates because they were not narrowly drawn to advance any compelling government interest. Indeed, the District Court stated that the statutes could not be sustained even under less stringent rational basis review.[8]

The District Court offered two reasons for its ruling. First, the Court concluded that the principal rationale undergirding the federal statutes regulating the distribution of obscenity and the line of Supreme Court decisions upholding them is no longer valid. More specifically, the District Court stated that after the Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558 (2003), "the government can no longer rely on the advancement of a moral code, i.e., preventing consenting adults from entertaining lewd or lascivious thoughts, as a legitimate, let alone a compelling, state interest." As such, the District Court indicated that the *Lawrence* decision seriously undermines the validity of the statutes themselves, as well as earlier Supreme Court decisions upholding those statutes on public morality grounds. Applying the above analysis to Extreme Associates' motion to dismiss, the Court concluded that because "upholding the public sense of morality is not even a

concurring).

[8]To survive rational basis review, a statute must be rationally related to the advancement of a legitimate state interest. *See, e.g.*, *Griswold*, 381 U.S. at 504 (White, J., concurring).

11

legitimate state interest that can justify infringing one's liberty interest to engage in consensual sexual conduct in private," such a "historically asserted state interest certainly cannot rise to the level of a compelling interest, as is required" under strict scrutiny.

Second, the District Court held that the Government's alternative asserted interests, i.e., putatively non-morality based interests, were not narrowly advanced by the complete ban on distribution of obscene materials embodied in the federal statutes regulating the distribution of obscenity. The Court stated that, owing to the character of the Internet generally and the particular protective technologies employed by Extreme Associates, the Government's asserted interests of protecting children and unwitting adults from exposure to obscenity could be accomplished by means less restrictive than a total ban on distribution. The Court added that because the latter of the two interests was likely motivated, at least partially, by regard for public morality, it would fail even rational basis review.

In sum, the District Court ruled that because *Lawrence* invalidated the primary rationale for the federal statutes regulating the distribution of obscenity and the Government's cited authority upholding them, and because the Government's remaining asserted interests, even if compelling, were not narrowly advanced by those statutes, the statutes were unconstitutional as applied to Extreme Associates on behalf of its customers. The District Court dismissed the indictment on

12

that basis.

## II.

### A.

The District Court had original jurisdiction over this criminal action under 18 U.S.C. § 3231. We exercise appellate jurisdiction over the final judgment of a district court under 28 U.S.C. § 1291. Whether the District Court properly dismissed the indictment against Extreme Associates is a question of law of which our review is plenary. *United States v. Ledesma-Cuesta*, 347 F.3d 527, 530 (3d Cir. 2003); *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000).

### B.

As a preliminary matter, we agree with the District Court that Extreme Associates has derivative standing to challenge the constitutionality of the federal statutes regulating the distribution of obscenity on behalf of its customers. The Supreme Court consistently has upheld the ability of vendors to challenge the constitutionality of statutes on their customers' behalf where those statutes are directed at the activity of the vendors. In *Carey v. Population Services International*, 431 U.S. 678, 682-84 (1977), the Court held that a mail-order seller of non-medical contraceptives had standing to argue that a state statute prohibiting the distribution of non-medical contraceptives

13

violated its customers' substantive due process rights to use such contraceptives. Also, in *Craig v. Boren*, 429 U.S. 190, 195 (1976), the Court upheld the ability of a beer seller to challenge a state statute on behalf of certain underage customers. The Court noted that "vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Id.* Accordingly, Extreme Associates has standing to challenge the federal statutes regulating the distribution of obscenity as violative of the substantive due process rights of its customers.

III.

In its Memorandum, the District Court notes briefly, but never directly addresses, the Government's contention that "because the federal obscenity statutes have withstood constitutional attack for more than thirty-five years, this court lacks the authority to find that they are unconstitutional." The Government's brief on appeal raises the same issue by asserting, essentially, that the District Court erred by granting relief which effectively overturns applicable Supreme Court precedents on the ground that those precedents have been undermined or implicitly overruled by a subsequent Supreme Court decision. We agree with the Government that the District Court was in error, and we conclude that the District Court's violation of the principle articulated below requires reversal.

A.

In *Rodriguez de Quijas v. Shearson/American Express Inc.*, 490 U.S. 477, 484 (1989), the Supreme Court explicitly admonished lower courts that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *See also id.* (pointing out specifically that the Court of Appeals, "on its own authority," should not have "taken the step of renouncing" a previous Supreme Court decision interpreting the Securities Act, even as the Court itself goes on to overrule the decision in that very case). The Court reiterated its position in *Agostini v. Felton*, 521 U.S. 203, 237 (1997), stating "[w]e do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent." *Id.* The Court then proceeded to "reaffirm" the precise language quoted above from *Rodriguez*. *Id.* The Court explained that "[a]dherence to this teaching by the District Court and Court of Appeals in this litigation does not insulate a legal principle on which they relied from our review to determine its continued vitality," as lower courts are free to consider the issues and preserve them for the Court even as they obey controlling precedent. *Id.* at 237-38. In fact, even as the Court in *Agostini* concluded that its own adherence to the old precedent "would undoubtedly work a 'manifest injustice'" in light of later decisions, it emphasized that "the trial court

15

acted within its discretion in entertaining the motion [requesting relief under the newer cases] with supporting allegations, *but it was also correct to recognize that the motion had to be denied unless and until this Court reinterpreted the binding precedent.*" *Id.* at 236, 238 (emphasis added).

Our own cases steadfastly apply the *Agostini* doctrine. *See United States v. Singletary*, 268 F.3d 196, 205 (3d Cir. 2001) (quoting *Agostini* and indicating that "[w]e have always sought to adhere strictly to that counsel"); *United States v. Abuhouran*, 161 F.3d 206, 215 n.9 (3d Cir. 1998); *Moldonado v. Houstoun*, 157 F.3d 179, 190 (3d Cir. 1998); *United States v. Bishop*, 66 F.3d 569, 588 n.28 (3d Cir. 1995); *Swin Resource Sys., Inc. v. Lycoming County*, 883 F.2d 245, 255 (3d Cir. 1989). In fact, we emphasized in *Singletary* that even where a lower court's analytical position has merit, the obligation to follow applicable Supreme Court precedent is in no way abrogated:

> even if there were merit to Singletary's argument that the Supreme Court's [later] decisions have somehow weakened the precedential value of [the older case], we may not precipitate its decline. The Supreme Court itself has admonished lower courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in subsequent decisions . . . .

*Singletary*, 268 F.3d at 205.  We reaffirm our intent to adhere

16

strictly to the principle articulated by the Supreme Court in *Agostini*. It follows that the District Court also was bound by that principle as it considered Extreme Associates' motion to dismiss the indictment.

B.

In this appeal, then, we must decide whether *Reidel*'s progeny, which the District Court found to be undermined by *Lawrence*, was "directly applicable" to Extreme Associates' motion to dismiss the indictment. As an analytical matter, we answer that question in the affirmative. In the broadest and most obvious sense, the Supreme Court has explicitly and repeatedly, in decisions rendered post-*Stanley*,[9] upheld the constitutionality of federal statutes regulating the distribution of obscenity. *See Reidel*, 402 U.S. at 351; *Thirty-Seven Photographs*, 402 U.S. at 363; *Orito*, 413 U.S. at 139; *12 200-*

___

[9]Although it does not deal directly with the question, *Stanley* itself, by implication, recognized the constitutionality of the federal statutes regulating the distribution of obscenity even as it recognized the right to possess and observe obscene materials in the home. *See Stanley*, 394 U.S. at 567-68 (indicating that even if prohibiting obscenity *possession* is necessary to facilitate the enforcement of statutory schemes prohibiting its *distribution*, the right to possess materials within the privacy of the home is so important that "its restriction may not be justified by the need to ease the administration of *otherwise valid criminal laws*.") (emphasis added).

*Ft. Reels*, 413 U.S. at 123.

Furthermore, the above cases consistently uphold the constitutionality of the statutes as applied to the right recognized in *Stanley*. *See*, *e.g.*, *Thirty-Seven Photographs*, 402 U.S. at 376; *Orito*, 413 U.S. at 141. The Court has stated clearly that the right recognized in *Stanley* to possess obscene material within the home (and, by logical implication, the ability to exercise that right) "does not mean" that there is a correlative right to distribute that material, *Thirty-Seven Photographs*, 402 U.S. at 376, that it "does not require" the Court to fashion a right to distribute, *Reidel*, 402 U.S. at 356, and that the *Stanley* "'right to receive' *is not a right to the existence of modes of distribution of obscenity*, which the State could destroy without serious risk of infringing on the privacy of a man's thoughts; rather, it is a right to a protective zone ensuring the freedom of a man's inner life . . . ." *Id.* at 359 (Harlan, J., concurring) (emphasis added).

It bears noting as well that in more than one of the cases following *Stanley*, the Court heard and rejected the arguments of dissenting Justices that proscribing distribution or private transportation of obscene materials evacuated the *Stanley* right of any significant meaning. *See Thirty-Seven Photographs*, 402 U.S. at 381 (Harlan, J., dissenting) (arguing that the right to possess and read obscene material at home "is hollow indeed" without some right to transport it); *Orito*, 413 U.S. at 14 (Douglas, J., dissenting) (asserting that there is no distinction

between private possession and private carriage of obscene material, and arguing that upholding the federal statutes regulating the distribution of obscenity necessitates overruling *Stanley*).

Most relevant to this appeal, the Supreme Court also has upheld the federal statutes regulating the distribution of obscenity specifically in light of the Court's broader privacy jurisprudence.  The District Court stated that *Stanley* and its progeny do not control the Extreme Associates' motion to dismiss because those cases were all decided merely on the basis that obscenity is not protected under the First Amendment. Extreme Associates argues that *Reidel*'s progeny dealt only with a "First Amendment concept of privacy."  As such, the argument runs, the pivotal obscenity cases ignored substantive due process analysis of the "private possession" right recognized in *Stanley* and, therefore, did not govern the motion to dismiss.[10]  We disagree.  It is true that none of the major cases use the phrase "substantive due process" in their holdings, but it is clear – particularly in *Orito* and *Paris Adult Theatre* – that the Court analyzed the federal statutes regulating the distribution of obscenity under both the principles and precedents that, according to the District Court and Extreme Associates, should

_____

[10]The District Court held, and Extreme Associates argues, further, that certain key cases are meaningfully factually distinguishable.  We reject that argument.  *See* section III.C., *infra*.

19

control this case. Moreover, where such analysis does appear, the Court has found challenges to the statutes under the general constitutional right to privacy unavailing.

In *Orito*, for example, the defendant was prosecuted under § 1462 for privately transporting obscene material in interstate commerce (to wit, knowingly carrying obscene materials in his private luggage on a domestic commercial flight). Orito "moved to dismiss the indictment on the ground that the statute violated both his First *and Ninth* Amendment rights." *Orito*, 413 U.S. at 140 (emphasis added). In dismissing the indictment, the Supreme Court explained that the District Court had misinterpreted not only *Stanley*, but also *Griswold* to establish constitutional protection for the "non-public" transportation of obscene material. *Id.* at 140-41.

As part of its analysis, the *Orito* Court noted that the Constitution "extends special safeguards to the privacy of the home, just as it protects other special privacy rights such as those of marriage, procreation, motherhood, child rearing, and education." *Id.* at 142. To support that assertion, the Court cited, *inter alia*, *Eisenstadt v. Baird*, 405 U.S. 438 (1972), and *Griswold*. *Id.* The Court elected, fully conscious of the right recognized in *Stanley*, to exclude transporting obscene material in interstate commerce from "such special consideration." *Orito,* 413 U.S. at 142. In upholding the statute at issue, the Court pointed out that the District Court had "erred in striking down 18 U.S.C. § 1462 and dismissing the indictment *on these*

*'privacy' grounds*." *Id.* at 141 (emphasis added). The Court also stated – again, fully conscious of and having made reference to the right articulated in *Stanley* – that in its decision to uphold bans on transporting obscene material within the stream of commerce, "no constitutionally protected privacy is involved." *Id.* at 143.

Similarly, in *Paris Adult Theatre*, though the Court dealt with obscenity in a "place of public accommodation" (a theater), much of the Court's analysis dealt squarely with the general constitutional right to privacy as it relates to the *Stanley* right. The Court first explained the scope of the right in question by indicating that its "prior decisions recognizing a right to privacy *guaranteed by the Fourteenth Amendment*"[11] referred to a right that "encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation and child rearing." *Paris Adult Theatre*, 413 U.S. at 65 (emphasis added). To support this proposition, the Court cited *Eisenstadt*, *Griswold* and *Stanley*. *Id.* The Court noted the legally operative difference between the *Stanley* right and those deriving from *Griswold* and *Roe*:

The protection afforded by Stanley . . . is

---

[11]*Paris Adult Theatre* dealt with a state statute, so the operative due process provision was that of the Fourteenth Amendment, rather than that of the Fifth Amendment at issue here.

21

restricted to a place, the home. In contrast, the constitutionally protected privacy of family, marriage, motherhood, procreation, and child rearing is not just concerned with a particular place, but with a protected intimate relationship. Such protected privacy extends to the doctor's office, the hospital, the hotel room, or as otherwise required to safeguard the right of intimacy involved.

*Id.* at 66 n.13 (citing *Roe* and *Griswold*).

The Court applied the above analysis in reaching its result:

If obscene material . . . carried with it a 'penumbra' of constitutionally protected privacy, this Court would not have found it necessary to decide Stanley on the narrow basis of the 'privacy of the home,' which was hardly more than a reaffirmation that a man's home is his castle. . . . Moreover, we have declined to equate the privacy of the home relied on in Stanley with a 'zone' of 'privacy' that follows a distributor *or a consumer* of obscene materials wherever he goes.

*Paris Adult Theatre*, 413 U.S. at 66 (citing *Stanley*, *Orito*) (emphasis added). Finally, summarizing the case, the Court

22

indicated it had "reaffirmed [its] holding[]" that "commerce in obscene material is unprotected by *any constitutional doctrine of privacy*." *Id.* at 69 (citing *Orito*, *Reidel*, *Thirty-Seven Photographs* and *12 200-Ft. Reels*) (emphasis added).

We conclude that the Supreme Court has analyzed and upheld the federal statutes regulating the distribution of obscenity under the constitutional right to privacy embodied collectively in the First, Ninth, and Fourteenth (thus also the Fifth) Amendments, as well as the *Griswold* line of decisions that the District Court asserted should control this case. The fact that such analysis has never been applied within the precise scenario outlined by the District Court – i.e., use of the talismanic phrase "substantive due process" in the context of a vendor proceeding under derivative standing on behalf of a consumer's right to privately possess obscene material – does not negate the binding precedential value of the Supreme Court cases employing that analysis. The Court's analysis need not be so specific in order to limit a district court's prerogative to overturn an entire category of federal statutes, even as applied to particular defendants, based on speculation about a later decision that fails even to mention those statutes. The Court has considered the federal statutes regulating the distribution of obscenity in the context of the broader constitutional right to privacy and upheld them. That such analysis was conducted absent its constitutional brand name does not negate its precedential value.

In sum, the District Court's Order granting Extreme Associates' motion to dismiss the indictment, as well as Extreme Associates' brief on appeal, deal with the same statutes upheld repeatedly by the Supreme Court. They assert (albeit derivatively) the same right referenced and analyzed in multiple Supreme Court decisions – all of which declined to strike down any part of any statute regulating the distribution of obscenity. Finally, the Supreme Court has analyzed and upheld the constitutionality of the federal statutes regulating the distribution of obscenity specifically in light of the Court's broader right-to-privacy jurisprudence.

C.

We now turn to whether *Reidel* and its progeny, which we find analytically apposite, are meaningfully factually distinguishable from the case at bar. If there is a material factual distinction between the instant case and the putatively controlling precedent, analysis under *Agostini* is wholly inappropriate. Where, as here, an "as applied" constitutional challenge, rather than a facial one, is before the court, this analytical step is of particular importance. The District Court concluded, and Extreme Associates now argues on appeal, that the key cases in the *Reidel* line can be distinguished on their facts inasmuch as (1) none of the key cases address substantive due process privacy rights; (2) certain of the cases dealt exclusively with border and importation issues; and (3) none of the previous obscenity decisions involved transmissions over the

24

Internet. We are unpersuaded by these arguments, however, and we conclude that *Orito* and the other key cases discussed above are sufficiently similar to the instant case to govern it.[12]

First, as discussed at length in section III.B., the District Court Memorandum adopted Extreme Associates' position that all of the relevant obscenity cases following *Stanley* are distinguishable inasmuch as none of those cases involved a substantive due process privacy challenge against the federal statutes regulating the distribution of obscenity or engaged in such privacy analysis. As we have indicated, we adjudge those assertions to be incorrect, and we need not discuss them further here.

Second, both the District Court and Extreme Associates attempt to distinguish *12 200-Ft. Reels* and *Thirty-Seven Photographs* on the ground that they deal exclusively with importation and border issues, arguing that such a context necessarily triggers a different analytical framework. This

_____

[12]We find especially puzzling the District Court's conclusion that *Orito* is "distinguishable on [its] facts." The District Court concluded that *Orito* was factually distinguishable because the Court in that case "held that the obscenity statutes could be justified as a method of protecting the public morality, a justification no longer valid after <u>Lawrence</u>." That observation fails to distinguish *Orito* factually in any way, and, as we discuss below, is analytically irrelevant to the disposition of this case.

25

argument is a closer call, but it is also unavailing. Though importation issues do provide the factual backdrop of both cases, both cases engage in standard *Stanley* analysis and are at least generally concerned with Congress's ability, upheld in both cases, to bar transportation of obscene materials in the channels of commerce. *See 12 200-Ft. Reels*, 413 U.S. at 128; *Thirty-Seven Photographs*, 402 U.S. at 376. At all events, even if we were to grant that *12 200-Ft. Reels* and *Thirty-Seven Photographs* are relevantly distinguishable, *Orito* still deals squarely with *Stanley*, the federal statutes regulating the distribution of obscenity, privacy, and the ability of Congress constitutionally to ban any presence of obscene material in domestic interstate commerce. *Orito* alone provides directly applicable precedent as to the instant appeal.

Finally, Extreme Associates argues that the relevant cases are distinguishable because they "were all decided before the advent of the Internet," suggesting that "the commercial transportation of obscenity considered by the Court [in those cases] was of a more public variety than the Internet commerce at issue here." As such, "[t]he concern for community decency and order that arose in [the other obscenity cases] is irrelevant to this prosecution."[13] We decline to join appellees in that

---

[13]We note that Extreme Associates' Internet argument necessarily fails to distinguish three of the counts of the indictment involved in this case. Three counts allege that Extreme Associates distributed obscene materials through the

26

analytical leap. The mere fact, without more, that the instant prosecution involves Internet transmissions is not enough to render an entire line of Supreme Court decisions inapplicable given their analytical and other factual similarities to this case.

Extreme Associates correctly quotes dicta from *Reno v. American Civil Liberties Union,* 521 U.S. 844 (1997), indicating that the Internet is "a unique and wholly new medium of worldwide communication." *Id.* at 850 (citing without comment finding of fact 81 from the District Court in that case). In the same case, however, the Court noted that "[t]ransmitting obscenity . . . whether via the Internet or other means, is already illegal under federal law for both adults and juveniles," and implied that the "Child Decency Act," a statute regulating pornography over the Internet at issue in *Reno*, might be unnecessary owing to the existing federal statutes regulating the distribution of obscenity. *Id.* at 878 n.44 (citing 18 U.S.C. § 1465). In other words, the Court thus far has not suggested that obscenity law does not apply to the Internet or even that a new analytical path is necessary in Internet cases. If the Supreme Court wishes to treat all Internet obscenity cases as *sui generis* for purposes of federal obscenity law analysis, it has not yet said

United States mail. Identical conduct was at issue in the case of *United States v. Reidel*, 402 U.S. 351 (1971). Seven of the ten counts in the present indictment, however, do pertain to distributing video clips to home computers through the Internet.

27

so, "tacitly" or otherwise.[14]

Even clearer is the fact that *Orito* and *Paris Adult Theatre* affirm the power of Congress to "regulate interstate commerce to the extent of forbidding and punishing the use of such commerce as an agency to promote immorality . . . or harm to the people of other states from the state of origin." *Orito*, 413 U.S. at 144 n.6; *see also id.* at 144 ("Congress may impose relevant conditions . . . on those who use the channels of interstate commerce in order that those channels will not become the means of spreading evil, whether of a physical,

---

[14]Were we to concede that the Supreme Court has or is prepared to analyze obscene Internet transmissions differently because, unlike the acts involved in *Orito* and other cases, such transmissions involve no "physical" transportation of obscenity outside the home, that concession would not save Extreme Associates' motion. The holding in *Orito*, for example, involves two prongs: (1) Congress may regulate obscenity on the basis of the danger that it will not remain private once it physically leaves the home in any way, *Orito*, 413 U.S. at 143; and (2) irrespective of any such danger, Congress may prevent interstate commerce and the channels thereof from being used to spread evil of a physical, moral or economic nature. Congress may therefore keep all obscene material entirely out of the stream of commerce. *Id.* at 143-44. At most, the aforementioned concession regarding the Internet would compromise prong (1). As we discuss below, the second prong stands unscathed for purposes of this appeal and, on its own, would dictate the result.

28

moral or economic nature"); *id.* at 143 ("[t]hat the transporter has an abstract proprietary power to shield the obscene material from all others and to guard the material with the same privacy as in the home is not controlling"); *Paris Adult Theatre*, 413 U.S. at 58 ("we hold that there are legitimate state interests in stemming the tide of commercialized obscenity, even assuming it is feasible to enforce effective safeguards against exposure to juveniles and passersby"); *id.* at 69 ("*commerce* in obscene material is unprotected by any constitutional doctrine of privacy") (emphasis added). The Internet is a channel of commerce covered by the federal statutes regulating the distribution of obscenity. Extreme Associates was indicted for engaging in commercial transactions that its own brief on appeal describes as "Internet commerce." This case cannot be meaningfully distinguished merely because it involves the Internet.

IV.

We are satisfied that the Supreme Court has decided that the federal statutes regulating the distribution of obscenity do not violate any constitutional right to privacy. For district and appellate courts in our judicial system, such a determination dictates the result in analogous cases unless and until the Supreme Court expressly overrules the substance of its decision. *Lawrence v. Texas* represents no such definitive step by the Court. It was therefore impermissible for the District Court to strike down the statutes at issue based on speculation that *Orito*

and other pivotal obscenity cases "appear[] to rest on reasons rejected in" *Lawrence*. *Agostini*, 521 U.S. at 237. Even if there were analytical merit to such speculation, an issue on which we do not opine, the constraint on lower courts remains the same. The possibility that *Lawrence* has "somehow weakened the precedential value of" the *Reidel* line of cases is irrelevant for purposes of ruling on the instant indictment. *Singletary*, 268 F.3d at 205.

We conclude that directly applicable Supreme Court precedent, upholding the constitutionality of the federal statutes regulating the distribution of obscenity under First Amendment and substantive due process privacy rights, governs this case. The District Court was bound by that authority, as are we, to uphold those statutes as applied to Extreme Associates on behalf of its customers. As such, the District Court erred in striking down the statutes and dismissing the indictment against Extreme Associates.

Accordingly, we will reverse the Order of the District Court and remand the case for further proceedings consistent with this opinion.